LILLIAN H. WHALEY, ADMINISTRATRIX OF THE ESTATE OF WILLIAM CHARLES WHALEY, DECEASED, AND FIRESTONE TIRE AND RUBBER COMPANY v. GREAT AMERICAN INSURANCE COMPANY AND INSURANCE COMPANY OF NORTH AMERICA.

(Filed 14 June 1963).

1. **Insurance § 65.1—**

A party discharging the liability of insured's estate under an agreement that it should be subrogated to all claims of the estate against insurer stands in the same position as the personal representative of the estate in an action to recover against insurer.

2. **Insurance § 54—**

The provisions of a policy of liability insurance extending coverage to the use of other automobiles by insured without the payment of extra premium usually excludes coverage of other cars owned by insured or by members of his household, and also cars furnished for regular use of the insured, the purpose of the extension being to provide coverage for the occasional and infrequent driving by insured of an automobile other than his own.

3. **Same— Policies held not to cover non-owned vehicle furnished insured by his employer for business purposes.**

Policies of insurance covering an individually owned motor vehicle were issued to insured. The accident causing loss occurred while insured was operating a vehicle owned by his employer and regularly furnished insured solely for company business, but which was habitually used by the insured for his personal pleasure without the actual notice or knowledge of the employer. Insurer was the local manager for the employer and as such had final authority in the locality with reference to the use of the employer's vehicle. *Held:* The employer's vehicle was furnished insured for regular use so as to be excluded from coverage under the provisions of the policy relating to casual use by insured of non-owned vehicles.

APPEALS by plaintiffs and by defendant Great American Insurance Company from *Morris, J.,* January-February 1963 Civil Session of WAYNE.

Civil action to determine the liability, if any, of each defendant to plaintiffs under automobile liability insurance policies.

The cause was submitted for decision on the following stipulated facts:

"1. William Charles Whaley, a resident of Wayne County, was on the 13th day of June 1959, and had been for several years manager of the Goldsboro store of Firestone Tire & Rubber Company, the district office under which this store was operated being in Charlotte, North Carolina.

"2. That during the year 1959, and prior thereto, the plaintiff, Firestone Tire & Rubber Company, owned a 1957 Ford automobile motor number B 7 CG 129548, which had 1959 North Carolina license plates number AW-1538 on it, and that the same was stationed at the Firestone Tire & Rubber Company, Goldsboro, North Carolina, for the regular use of its manager, William Charles Whaley, and five other employees in the conduct of the company's business.

"3. That during 1959, William Charles Whaley was the owner of a 1957 Plymouth automobile motor number 16226194, and William Charles Whaley and his family resided at 600 South Madison Avenue, Goldsboro, North Carolina.

"4. That William Charles Whaley had been employed by Firestone Tire & Rubber Company as manager of its Goldsboro store since on or about the first day of February 1949.

"5. That on or about January 8, 1959, the Great American Insurance Company issued and delivered its liability policy number 4-36-56-81 to William Charles Whaley, whereby it agreed to protect the said William Charles Whaley against liability for damage to third parties with policy limits of $5,000 property damage, $5,000 personal injury to any one person, and $10,000 for any one accident, upon the terms and conditions set forth in the policy, and for a period of one year from and after January 8, 1959, and that the same was in force and effect in accordance with its terms on June 13th, 1959, and said policy is hereby incorporated and made a part of this statement of facts; said policy was not an assigned risk policy.

"6. On the 19th day of February 1959, the defendant, Insurance Company of North America, issued its automobile public

liability policy covering William Charles Whaley's 1957 Plymouth two-door automobile, motor number 16226194 — it was an assigned risk policy, and limits were $5,000 for one person, $10,000 for any one accident in personal injuries or wrongful death, and $5,000 limit for property damage, whereby it agreed to protect the said William Charles Whaley against liability for damages to third parties as set out in the policy which is incorporated and made a part of this statement.

"7.  The Insurance Company of North America's policy was issued through Denning Insurance & Realty Company as producer of record under an application to it made February 6, 1959, for liability insurance under the North Carolina automobile assigned risk plan; the Denning Insurance & Realty Company was not at the time of the application a representative of or agent for the defendant Insurance Company of North America; the Denning Insurance & Realty Company was at the time of the application a representative or agent for the defendant Great American Insurance Company on January 8, 1959.

"8.  That following the issuance of the said policy William Charles Whaley was furnished his S. R. 22 certificate and F. S. 1 form, which were filed with the proper authorities, being mailed on February 18, 1959, to the Department of Motor Vehicles, indicating a policy effective February 19, 1959.

"9.  That on June 12, 1959, shortly after the Firestone Tire & Rubber Company, Goldsboro, N. C., had closed for the day, William Charles Whaley announced that he was going fishing and sought the companionship of one or two other employees of Firestone Tire & Rubber Company; that said employees declined to go and William Charles Whaley stated, 'I know someone who will go with me,' and following this statement he made a telephone call and left the premises of Firestone Tire & Rubber Company in the automobile owned by Firestone Tire & Rubber Company, hereinabove identified as a 1957 Ford; that William Charles Whaley was next seen on June 13, 1959 at about 5:30 a.m., at a point located approximately six miles southeast of Goldsboro, N. C., on N. C. Highway 111, and that from the investigation of the highway patrolman it appeared that said vehicle was traveling in a northward direction toward Goldsboro on said highway when it was involved in a collision with a car owned by Franklin Delano Burgess, and being operated by Hampton Burgess, and that the bodies of William Charles Whaley and Ruth Lamm were located

on the ground near the Ford car owned by Firestone Tire & Rubber Company, which was a total wreck, and that fishing tackle was located on the ground at the scene and in the Firestone automobile; that further investigation revealed that the Burgesses were going fishing and headed in a Southward direction. Said Ruth Lamm was not an employee of the Firestone Tire & Rubber Company and was not a member of the Whaley family.

"10. In consequence of said automobile accident, the said Franklin Delano Burgess instituted a civil action in Wayne County Superior Court against Firestone Tire & Rubber Company and Lillian H. Whaley, Administratrix of the Estate of William Charles Whaley; that at the trial of said cause at the October 1960 term of the Superior Court of Wayne County a consent judgment was entered into, the terms and conditions of which are set forth in a copy of said judgment and incorporated herein by reference.

[The Burgess (consent) judgment provided that plaintiff have and recover a total of $9,000.00, $8,230.00 for personal injuries and $770.00 on account of property damage, and adjudged that the liability of the estate of Whaley was primary and that of Firestone was secondary. It provided further that the liability, if any, of each defendant to the estate of Whaley was to be determined in a separate action; that Firestone, upon payment of the Burgess judgment, would be subrogated to the rights, if any, of the estate of Whaley against defendants herein; and that each defendant herein would pay to Firestone the amount, if any, for which it would be liable to the estate of Whaley if it had paid the Burgess judgment.]

"11. That in consequence of said judgment Firestone Tire & Rubber Company paid to the said Franklin Delano Burgess the sum of $770.00 representing property damage, and the sum of $8,230.00 for personal injuries, loss of salary, hospital bills, etc. Hampton Burgess, hereinabove referred to, had not at the October 1960 Term of Civil Court for Wayne County filed suit for personal injuries and the parties in the case, Franklin Delano Burgess v. Lillian H. Whaley, Administratrix of the Estate of William Charles Whaley, and Firestone Tire & Rubber Company agreed by contract that Firestone Tire & Rubber Company would pay the sum of $2,000 to Hampton Burgess in full settlement of all claims he might have arising out of this wreck for personal injuries, and that said payment would be made under the same

terms and conditions as set out in the consent judgment entered in that case; that pursuant thereto Firestone Tire & Rubber Company paid $2,000 to Hampton Burgess as agreed.

"12. This suit was instituted for the purpose of determining the liability of the defendants, if any, on the policies of insurance set out in the complaint and as agreed to in the consent judgment hereinbefore set forth.

"13. It is agreed that in the application for an assigned risk policy prepared by Denning Insurance & Realty Company, and signed by William Charles Whaley, there is a question number 19, which reads as follows:

'Has applicant tried and failed to obtain automobile liability insurance within 60 days prior to date of this application? Answer: Yes.'

and the application is dated February 6, 1959.

"14. That the 1957 Ford automobile which Whaley was driving at the time of the wreck of June 13, 1959, was not owned by Whaley and he had no interest in it; that this 1957 Ford automobile was not a temporary substitute automobile as that term is used in the policies issued by the defendants to William Charles Whaley in this case.

"15. When William Charles Whaley was employed by Firestone Tire & Rubber Company in 1941 he signed a card entitled 'NOTICE TO ALL COMPANY EMPLOYEES,' a copy of which is attached and made a part of this stipulation.

"16. And at the time of the automobile accident, June 13, 1959, and for sometime prior thereto the Company's regulations with reference to the use of the company vehicles were as follows:

'USE OF COMPANY VEHICLES — Following policies apply to usage of company vehicles at all locations:

1. Company vehicles are to be driven only by qualified and legally licensed company employees.

2. Use only in the conduct of necessary company business. No one, under any circumstances, is to use or operate company vehicles for personal affairs or pleasure. Except in unusual cases, store vehicles should not be operated other than during regular store hours.

3. Do not carry passengers except when both driver and passenger are on company business.

4. Do not permit operation by persons under 18 years of age.

5. Vehicles must not be driven faster than legal speed limits.'

A book containing a copy of these regulations was in the custody of William Charles Whaley as manager of the Goldsboro store of Firestone Tire & Rubber Company.

"17. Notwithstanding these regulations, Mr. Whaley did, on numerous occasions between January 8, 1959 and June 13, 1959, and prior thereto, use the Ford automobile referred to for his own personal business and pleasure.

"18. The Firestone Tire & Rubber Company had no actual notice or actual knowledge of this use of its automobile by Whaley for his own personal business and pleasure until the trial of the *Burgess* case hereinbefore referred to in October 1960.

"19. At the time of the accident on June 13, 1959, William Charles Whaley was using the Firestone Tire & Rubber Company's automobile for his own personal business or pleasure without the knowledge, permission or consent of the Firestone Tire & Rubber Company."

On these facts, together with the insurance policies, the consent judgment and the (1941) card referred to in the stipulation, the court entered judgment as follows:

"IT IS THEREUPON CONSIDERED, ORDERED, DE-CREED and ADJUDGED that the plaintiffs have and recover of Great American Insurance Company the sum of $7,770.00 to-gether with interest thereon from November 1, 1960, until paid, together with the costs of this action.

"IT IS FURTHER ORDERED, DECREED AND AD-JUDGED that the plaintiffs have and recover nothing of the de-fendant, Insurance Company of North America."

Plaintiffs *and* Great American Insurance Company excepted and appealed.

*Taylor, Allen & Warren, Scott B. Berkeley and John H. Kerr, III, for plaintiffs.*

*Braswell & Strickland for defendant Great American Insurance Company.*

*T. Lacy Williams for defendant Insurance Company of North America.*

BOBBITT, J.    In the *Burgess* (consent) judgment it was agreed that, upon payment thereof by Firestone, "an action may be brought by it, as subrogee of the William Charles Whaley estate, or in the name of Lillian H. Whaley, Administratrix of the estate of *William Charles Whaley v. Great American Insurance Company and North American Insurance Company (sic),* to determine their liability on the policies referred to." Firestone paid the judgment. This action was instituted solely for its benefit. It is not an insured under either policy. It must recover, if at all, as subrogee. It stands in the same position as that in which the administratrix of Whaley's estate would stand if she had paid the judgment and were the plaintiff and real party in interest herein.

### PLAINTIFFS' APPEAL

Plaintiffs' appeal is from the portion of the judgment providing that they "have and recover nothing of the defendant Insurance Company of North America."

When the accident occurred, Whaley was driving Firestone's Ford. He was not driving the automobile specifically described in the policy, to wit, his Plymouth.

The liability, if any, of Insurance Company of North America must be based on Paragraph V ("Insuring Agreements") of its policy, which, in pertinent part, provides:

"V.    Use of Other Automobiles:    If the named *insured* is an individual or husband and wife and if during the policy period such named *insured,* or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, division 1 of coverage C and E with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

"(a) . . .

"(b) . . .

"(c) . . .

"(d) This insuring agreement does not apply:

(1) to any automobile owned by or furnished for regular use to either the named *insured* or a member of the same household other than a private chauffeur or domestic servant of such named *insured* or spouse; . . ."

Was Firestone's Ford "furnished for regular use to" Whaley within the intent and meaning of (d) (1)?

The "Use of Other Automobiles" clause "extends the driver's regular insurance to casual driving of automobiles other than his own without the payment of an extra premium, and usually excludes from coverage other cars owned by the insured or by members of his household as well as cars furnished for regular use of the insured or used in his business." 7 Am. Jur. 2d, Automobile Insurance § 105; Annotations: 173 A.L.R. 901, 83 A.L.R. 2d 926, 86 A.L.R. 2d 937; 7 Appleman, Insurance Law and Practice, § 4455.

"The obvious purpose of the 'other car' provisions, with the exceptions, is to provide coverage to a driver without additional premiums, for the occasional or infrequent driving of an automobile other than his own. They are not to take the place of insurance on automobiles which are furnished for the regular use of the insured. (Citations) The purpose is not to insure more than one car on a single policy." *Wyatt v. Cimarron Insurance Company*, 10 Cir., 235 F. 2d 243; *Home Insurance Company v. Kennedy* (Del.), 152 A. 2d 115.

In *Campbell v. Aetna Casualty and Surety Co.*, 4 Cir., 211 F. 2d 732, the Court of Appeals, in opinion by Soper, J., quotes with approval, as in accord with the great weight of authority, the following from the opinion of Chesnut, J., in *Aler v. Travelers Indemnity Co.*, 92 F. Supp. 620, *viz.*: "The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so." In *Leteff v. Maryland Casualty Company* (La.), 91 So. 2d 123, the court, after an exhaustive review of earlier decisions, approves the interpretation given in Judge Chesnut's opinion in *Aler*. Later decisions of like import include *Home Insurance Company v. Kennedy, supra; O'Brien v. Halifax Insurance Co. of Massachusetts* (Fla.), 141 So. 2d 307.

"No absolute definition can be established for the term 'furnished for regular use.' Each case must be decided on its own facts and circumstances." *Home Insurance Company v. Kennedy, supra; Miller v. Farmers Mutual Automobile Insurance Co.* (Kan.), 292 P. 2d 711.

During 1959 and prior thereto, Firestone's Ford "was stationed" at its place of business at Goldsboro "for the regular use of its manager, William Charles Whaley, and five other employees in the conduct of the company's business." Clearly, the policy on Whaley's own individual car, the Plymouth, would provide no coverage if Whaley, when the

accident occurred, had been engaged "in the conduct of the company's business." *Farm Bureau Mut. Automobile Ins. Co. v. Boecher* (Ohio), 48 N.E. 2d 895; *Farm Bureau Mutual Automobile Ins. Co. v. Marr*, 128 F. Supp. 67; *Voelker v. Travelers Indemnity Company*, 260 F. 2d 275; *Home Insurance Company v. Kennedy, supra.* Of like import, but relating to medical payments coverage rather than liability coverage: *Dickerson v. Millers Mutual Fire Ins. Co. of Texas* (La.), 139 So. 2d 785; *Moore v. State Farm Mutual Automobile Ins. Co.* (Miss.), 121 So. 2d 125; *O'Brien v. Halifax Insurance Co. of Massachusetts, supra.*

When the accident occurred, Whaley was using the Ford "for his own personal business or pleasure without the knowledge, permission or consent" of Firestone. Firestone's regulations provided, *inter alia*, that "(n)o one, under any circumstances, (was) to use or operate company vehicles for personal affairs or pleasure." When employed by Firestone in 1941, Whaley agreed (in writing) to comply with Firestone's instructions concerning the use of company cars by an employee, including the following: "Under no circumstances is the Company car to be used or operated by you in the interest of your personal affairs or pleasure and not upon the business of the Company and the carrying out of Company duties you were employed to perform."

Whaley had, "*on numerous occasions* between January 8, 1959 and June 13, 1959, and prior thereto," used the Ford, "for his own personal business and pleasure." (Our italics) Firestone had no actual notice or knowledge of Whaley's use of its Ford for his own personal business and pleasure until the trial of the *Burgess* case in October, 1960. Whaley was manager of Firestone's Goldsboro store; and, as manager, Whaley's authority *in Goldsboro* with reference to the use of Firestone's Ford was final. In fact, Firestone's Ford was available for Whaley's use for his own personal business and pleasure and was so used by him "on numerous occasions."

The contention that the policy provides coverage *because,* when the accident occurred, Firestone's Ford was being used by Whaley for his own business and pleasure rather than "in the conduct of the company's business," is untenable. The fact that Whaley was using the Ford in violation of Firestone's regulations and instructions cannot enlarge the coverage provided Whaley by the policy on his own individual car, a Plymouth. To hold otherwise would permit Whaley to benefit from his own wrongful conduct. A different basis of decision must be found.

In *Iowa Mutual Insurance Company v. Addy* (Colo.), 286 P. 2d 622, the "Use of other automobiles" clause under consideration pro-

vided, *inter alia,* it did not apply to any other automobile furnished for regular use to the named insured. The question was whether the policy, which specifically described an Oldsmobile owned by the insured, provided coverage to the insured with reference to a liability he incurred while operating his employer's Chevrolet. The employer, a casualty company, had provided the Chevrolet for the insured's use as a claim adjuster. The insured used the Chevrolet daily in his employer's business and, with his employer's knowledge and consent, kept it at his home overnight. On Thanksgiving Day the insured was involved in an accident while en route to the home of friends "across the City of Denver," with whom the insured, his wife and their children were to have dinner. The court held the policy did not cover the insured's liability and reversed the judgment the plaintiff (insured's wife) had obtained in the trial court. The opinion of Holland, J., states: "It is undisputed and undenied that the automobile in which plaintiff was riding was furnished her husband for his regular use in his employment. Such automobile by a provision of paragraph V(b) (1) of the policy is excluded, because the provisions are clear that the insuring agreement did not apply to any automobile 'furnished for the regular use to the named insured.'" This Colorado decision is discussed in *Ransom v. Casualty Co.,* 250 N.C. 60, 108 S.E. 2d 22, with particular reference to the "Temporary Substitute Automobile" clause. Here it was stipulated Firestone's Ford "was not a temporary substitute automobile as that term is used in the policies issued by the defendants" to Whaley.

In our view, coverage depends upon the *availability* of the Ford *for use* by Whaley and the *frequency of its use* by Whaley. *Rodenkirk v. State Farm Mut. Automobile Ins. Co.* (Ill.), 60 N.E. 2d 269; *Vern v. Merchants Mut. Casualty Co.,* 118 N.Y.S. 2d 672. It was "furnished" to Whaley by Firestone in the sense it was placed and continued under Whaley's authority and control. It was available for use by Whaley over an extended period and was used by him "on numerous occasions." The stipulated facts dispel any suggestion that Whaley's use of the Ford "for his own personal business and pleasure," was casual, occasional or infrequent. The stipulated facts establish that Whaley regularly used the Ford "for his own personal business and pleasure" as well as "in the conduct of the company's business." It is our opinion, and we so decide, that Firestone's Ford was "furnished for regular use to" Whaley within the meaning of the policy.

The factual situation is quite different from those considered in *Miller v. Farmers Mutual Automobile Insurance Co., supra,* and *Comunale v. Traders & General Ins. Co.* (Cal.), 253 P. 2d 495, where

it was held the evidence sustained the trial court's findings that the car the insured was driving at the time of the accident was not furnished for his regular use.

Decisions cited and stressed by plaintiffs, discussed below, are factually distinguishable. We perceive no conflict between these decisions and our present decision. In this jurisdiction, the question appears to be one of first impression.

In *Pacific Automobile Ins. Co. v. Lewis* (Cal.), 132 P. 2d 846, the accident occurred when Wells, by express permission of the sales manager, was driving his employer's car from San Diego to Pomona to make a personal visit. Wells, a salesman for a San Diego automobile agency, had been permitted to use his employers' cars as demonstrators and at times for personal purposes in the San Diego area. He had not on any previous occasion taken an automobile belonging to his employers away from the vicinity of San Diego. It was held that Wells' liability to Lewis, an injured party, was covered under the "drive other cars" provision in policies which provided principal coverage for automobiles not involved in the accident. The basis of decision is indicated by this excerpt from the opinion: ". . . But when a car thus furnished for such a use is driven to a distant point *on one occasion,* with the *special permission* of the one furnishing the car, that *particular use* would hardly seem to be a 'regular use' of the car. It cannot be said, as a matter of law, that such a use on *a particular occasion,* which is a departure from the customary use for which the car is furnished, is *a regular use within* the meaning of these clauses of the policies. . . ." (Our italics)

In *Palmer v. Glens Falls Insurance Company* (Wash.), 360 P. 2d 742, the opinion, referring to *Pacific Automobile Ins. Co. v. Lewis, supra,* states: "There, a salesman, who regularly drove a company automobile in his employment, was held not to be engaged in the regular use of it on a special occasion when, by special permission for one occasion only, he was permitted to take it for a private purpose on a personal visit." In accord with *Pacific Automobile Ins. Co. v. Lewis, supra,* it was held: "An agreement for a regular use of an automobile does not, in fact, preclude *a special use of a different nature* if it is *specifically authorized for one occasion only."* (Our italics)

In *Schoenknecht v. Prairie State Farmers Ins. Ass'n.* (Ill), 169 N.E. 2d 148, the policy involved specifically insured the plaintiff's Buick. The accident occurred May 2, 1957, about 11:00 p.m., when plaintiff was driving his employer's Chevrolet. The employer furnished plaintiff the Chevrolet for use in the performance of the duties of his employment. When the accident occurred plaintiff, in violation of his

duty to return the Chevrolet to his employer's shop at the conclusion of each day's work, was using the Chevrolet for personal purposes. It was held the plaintiff's liability was covered by the "Use of Other Automobiles" clause in his policy. This excerpt from the opinion indicates the basis of decision: "Plaintiff was furnished this car (the Chevrolet) for his sole use in connection with the business of his employer during his working hours. He had never used the car to take him anywhere except upon the business of his employer and during his working hours. The only time he had ever used it was during his working hours and in furtherance of his employer's interest except on the occasion in question. The use of this car at this time was under the authorities, an isolated, casual, unauthorized use of an automobile other than his own and comes within the insuring agreements of this policy designated 'use of other automobiles.' "

In *Sperling v. Great American Indemnity Company*, 7 N.Y. 2d 442, 199 N.Y.S. 2d 465, 166 N.E. 2d 482, the policy issued to Mrs. Nystrom specifically covered her Buick. A Chevrolet, parked on a public street, was stolen by Christine, Mrs. Nystrom's 16-year-old daughter; and an accident occurred while Christine was operating the stolen car. In a wrongful death action, the plaintiff recovered a judgment against Christine for approximately $125,000.00. The plaintiff contended Christine was an insured under the following provisions (under the heading "Persons Insured") of the policy:

"The following are insureds under Part I (Liability):

"(a) With respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

"(b) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative."

The term "non-owned automobile" was defined as meaning "an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile."

The Court of Appeals, in a four to three decision, held the judgment debtor was covered while operating a stolen car bcause she was a relative and driving a private passenger car not regularly furnished for her use. As stated by Hastie, J., in *Home Indemnity Company v. Ware*, 3 Cir., 285 F. 2d 852, ". . . the dissenters derived a contrary

meaning from the language of the policy. In their view the expression 'not regularly furnished' for the use of a relative means 'occasionally furnished' for his use, and no more than that. Under this analysis a stolen car, which is not 'furnished' at all, is excluded entirely from the coverage of the policy." The majority view was that the manner in which Christine acquired the Chevrolet was irrelevant. The majority opinion states: "The *exclusion* of coverage for relatives driving nonowned automobiles was, by its terms, concerned with *regularity* of use, not *permissiveness* of use, and was designed to protect the company from being subjected 'to greatly added risk without the payment of additional premiums' (*Vern v. Merchants Mut. Cas. Co.*, 21 Misc. 2d 51, 52, 118 N.Y.S. 2d 672, 674)."

Whatever the correct view with reference to the policy provisions and facts considered in *Sperling,* the stolen (Chevrolet) car was operated by Christine only on one occasion. It had not been regularly used by her nor had it been available for her use. It would seem such a policy would not provide coverage if the "non-owned automobile," although a stolen car, had been available for regular use and had been so used.

Upon the stipulated facts it is our opinion, and we so decide, that the policy issued by the Insurance Company of North America to Whaley, providing principal coverage for Whaley's Plymouth, did not cover the liability incurred by Whaley while operating Firestone's Ford on the occasion of the collision. Hence, the portion of the judgment providing that plaintiffs "recover nothing of the defendant Insurance Company of North America," is affirmed.

## GREAT AMERICAN'S APPEAL

Great American's appeal is from the portion of the judgment providing that plaintiffs "have and recover of Great American Insurance Company the sum of $7,770.00," together with interest and costs.

The liability, if any, of Great American must be based on the following provisions of its policy:

"Persons Insured.   The following are insureds under Part I:

"(a)  With respect to the owned automobile,

(1) . . .
(2) . . .

"(b)  With respect to a non-owned automobile,

(1)  the named insured,

> (2) any relative, but only with respect to a private pas-
> senger automobile or trailer,
>
> provided the actual use thereof is with the permission of
> the owner;

"(c) . . ."

The term "non-owned automobile," as used in (b) under "Persons
Insured," and as defined in the policy, "means an automobile or trailer
not owned by or furnished for the regular use of either the named in-
sured or any relative, other than a temporary substitute automobile."
It was stipulated Firestone's Ford "was not a temporary substitute
automobile."

The "owned automobile" referred to in (a) was Whaley's Plymouth.
The policy provided coverage if, but only if, Firestone's Ford operated
by Whaley was a "non-owned automobile" *as defined in the policy.*
*Kirk v. Insurance Co.,* 254 N.C. 651, 655, 119 S.E. 2d 645, and cases
cited. A "non-owned automobile" was an automobile "not . . . furnished
for the regular use" of Whaley.

Upon the stipulated facts, and for the reasons stated in connection
with our consideration of plaintiffs' appeal, we are of opinion, and so
decide, that Firestone's Ford was furnished for the regular use of
Whaley within the intent and meaning of the policy; and that Great
American's policy, providing principal coverage for Whaley's Ply-
mouth, did not cover the liability incurred by Whaley while operating
Firestone's Ford on the occasion of the collision. Hence, the portion of
the judgment providing that plaintiffs recover from Great American
must be and is reversed.

In view of the conclusion(s) reached, we do not discuss other de-
fenses asserted by defendants or the evidence pertinent thereto.

On plaintiffs' appeal: Affirmed.

On Great American's appeal: Reversed.