STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF-APPELLEE v. MAJOR KENNETH BRANCH; DON WHITEHURST PONTIAC, BUICK AND GMC, INC. D/B/A AMERICAN TRUCK AND AUTO LEASING; AND UNIVERSAL UNDERWRITERS INSURANCE COMPANY, DEFENDANTS-APPELLANTS

No. 933SC202

(Filed 5 April 1994)

**Insurance § 571 (NCI4th)— automobile liability insurance — noncovered vehicle furnished for regular use — exclusion from coverage**

A Mercedes automobile was furnished to defendant driver for his regular use at the time of an accident and was excluded from coverage under the driver's personal automobile liability policy by the "furnished for your regular use" exclusion for noncovered vehicles where the driver leased the Mercedes from defendant dealer and continued to possess the vehicle after the lease expired; he returned the vehicle to the dealer for repairs and discussed purchasing it from the dealer; upon completion of the repairs, the Mercedes was returned to the driver so that he could test drive it; and the driver continued to possess and use the vehicle for twenty-nine days until the

STATE FARM MUT. AUTOMOBILE INS. CO. v. BRANCH

[114 N.C. App. 234 (1994)]

accident occurred. Therefore, the dealer's garage liability policy provided coverage for the accident.

**Am Jur 2d, Automobile Insurance §§ 217 et seq.**

**Liability insurance of garages, motor vehicle repair shops and sales agencies, and the like. 93 ALR2d 1047.**

**When is automobile furnished or available for regular use within "drive other car" coverage of automobile liability policy. 8 ALR4th 387.**

Appeal by defendants from order entered 16 December 1992 by Judge George K. Butterfield, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 5 January 1994.

*Speight, Watson, Brewer & Stanley, by William C. Brewer, Jr. and Sara Beth Fulford Rhodes, for plaintiff-appellee.*

*Wallace, Morris, Barwick & Rochelle, P. A., by Edwin M. Braswell, Jr., for defendants-appellants Don Whitehurst Pontiac, Buick and GMC, Inc. d/b/a American Truck and Auto Leasing.*

*Gaylord, Singleton, McNally, Strickland & Snyder, by Danny D. McNally, for defendant-appellant Major Kenneth Branch.*

JOHNSON, Judge.

On 11 August 1988, defendant Major Kenneth Branch (Branch) entered into a Lease Agreement with defendant Whitehurst Pontiac, Buick and GMC, Inc. d/b/a American Truck and Auto Leasing (American) for the lease of a 1986 Mercedes Benz owned by American. The lease agreement was for a period of eleven months and required the payment of $562.72 per month.

Upon the expiration of the lease in July 1989, Branch continued to possess and operate the Mercedes and make the monthly lease payments. In January 1990, Branch ceased making the monthly lease payments, but retained possession of the automobile.

On 2 July 1990, Branch returned the Mercedes to American for repairs and initiated discussions concerning purchasing another vehicle from the dealership. Mr. Don Whitehurst suggested that Branch purchase the Mercedes he was driving. Concerned about the mechanical stability of the automobile, Branch verbally agreed

to purchase the Mercedes upon completion of the repairs and after test driving the vehicle. On the same day, American returned the Mercedes to Branch's possession with a ninety-six hour Demonstration Permit for Use of Dealer Plate so that Branch could test drive the Mercedes. On or about 3 July 1990, Branch drove the Mercedes to South Carolina, where he continued to use and possess the vehicle during the entire month of July 1990.

On 31 July 1990, in or near the Town of Manning, South Carolina, Branch was involved in a collision with a 1987 Ford truck driven by Betty T. Baughman. At the time of the accident, Branch had a personal liability automobile policy in effect which had been issued by plaintiff State Farm Mutual Automobile Insurance Company. However, the policy did not list the Mercedes as a covered vehicle. The Mercedes was however covered under American's garage liability policy issued by defendant Universal Underwriters Insurance Company (Universal).

On 15 May 1991, plaintiff filed a declaratory judgment action against defendants Branch, American and Universal. Plaintiff alleged that at the time of the accident, the Mercedes was furnished for Branch's regular use and that plaintiff's automobile policy issued to Branch did not provide coverage for vehicles furnished for Branch's regular use. Therefore, plaintiff did not have an obligation to provide coverage for the collision Branch had with the Mercedes, nor did it have an obligation to defend Branch in the lawsuits which evolved from the accident.

On 18 April 1991 defendants American and Universal filed an answer to the complaint and counterclaimed for declaratory judgment. Defendants alleged that the Mercedes was not furnished for Branch's regular use, and that Branch was test driving the Mercedes on the day of the accident. Therefore, the Mercedes is covered by the plaintiff's liability policy. On 16 May 1991, plaintiff filed a reply to defendants' counterclaim.

On 3 December 1992, plaintiff filed a motion for summary judgment. Defendants, American and Universal filed a motion for summary judgment on 14 December 1992. Both motions were heard at the 14 December 1992 term of Pitt County Superior Court. On 16 December 1992, plaintiff's motion for summary judgment was granted. All defendants appealed to our Court.

Defendants first argue that the trial court erred in denying defendants' motion for summary judgment, because as a matter of law, the garage liability policy of American only provides excess coverage to a customer's liability policy when the customer is test driving the garage owner's vehicle.

Summary judgment is a device whereby judgment is rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). "Thus a defending party is entitled to summary judgment if he can show that claimant cannot prove the existence of an essential element of his claim, . . . or cannot surmount an affirmative defense which would bar the claim." *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981) (citations omitted). The issue before us then is whether American's policy only provides excess coverage. We hold that it does not.

In *United Services Auto. Ass'n v. Universal Underwriters Ins. Co.*, 332 N.C. 333, 420 S.E.2d 155 (1992), the North Carolina Supreme Court examined the same garage policy at issue in this case and concluded that the garage policy only provides excess coverage for the permissive user of the vehicle owned by the garage policy owner. The Court held that the garage policy does not provide coverage if the permissive user's personal automobile liability policy provides the minimum amount of coverage required by the Motor Vehicle Financial Responsibility Act.

In the case *sub judice*, however, the policy issued by plaintiff to Branch contained a provision which excluded coverage for the frequent or regular use of a non-covered vehicle. The policy issued by plaintiff to Branch contained the following language:

EXCLUSIONS

B. We do not provide Liability coverage for the ownership, maintenance or use of:

1. Any vehicle, other than your covered auto which is:

a. owned by you; or

b. furnished for your regular use.

The rationale behind this exclusion as noted by the North Carolina Supreme Court is to "give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so." *Whaley v. Insurance Co.*, 259 N.C. 545, 552, 131 S.E.2d 491, 496 (1963). Therefore, plaintiff is not obligated to provide coverage for the vehicle Branch was operating at the time of the accident in question, if the vehicle was provided for Branch's regular use.

The North Carolina Supreme Court has addressed the issue of regular use and concluded that "[n]o absolute definition can be established for the term 'furnished for regular use.' Each case must be decided on its own facts and circumstances." *Whaley*, 259 N.C. at 552, 131 S.E.2d at 496-97 (1963) (citations omitted). The Court also opined that determining whether a vehicle has been provided for a driver's regular use, requires examining the availability and frequency of use of the vehicle.

We find there is sufficient evidence to establish that the Mercedes was furnished for Branch's regular use and possession until the accident in question on 31 July 1990. This is true even though Branch allegedly began test driving the vehicle on 2 July 1990. The forecast of evidence shows that the Mercedes was placed under and remained under Branch's authority and control until the date of the accident. Additionally, the vehicle was available for Branch's exclusive use for the entire period in question. The fact that Branch returned the vehicle to American on 2 July 1990 is not dispositive because Branch continued to possess and use the vehicle. Accordingly, we overrule defendants' first assignment of error.

Defendants next argue that even if the trial court did not err in denying their motion for summary judgment, the trial court erred in granting plaintiff's motion for summary judgment because a genuine issue of material fact exists as to whether the Mercedes was provided for Branch's regular use. More specifically, defendants allege that a material question exists as to whether the Mercedes was placed with Branch for his regular use or placed with Branch for the sole purpose of allowing him to test drive the vehicle. We disagree.

Under the facts of this case, it is our opinion that American's reason or motive for entrusting Branch with the Mercedes has little bearing on the issue of regular use. It is undisputed that the Mercedes was placed in the exclusive possession of Branch and was available for his use. The frequency of Branch's use of the Mercedes is also undisputed; Branch used the Mercedes daily for transportation and for personal use. That this use was with the permission of American and for the principal purpose of a test drive, affects neither the availability nor frequency of the use of the Mercedes. *See Insurance Co. v. Bullock*, 21 N.C. App. 208, 203 S.E.2d 650 (1974). As such, we overrule defendants' second assignment of error.

The decision of the trial court is affirmed.

Judges MARTIN and McCRODDEN concur.