NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff v. CAROLYN WALTERS, RANDY WALTERS, GENE GOUGE, RENA GOUGE & SHANE GOUGE, Defendants

No. COA00-281

(Filed 6 February 2001)

**Insurance— automobile—coverage—vehicle furnished to another**

An insurance policy issued by plaintiff to Gouge's parents did not provide liability coverage for an automobile accident involv-ing a vehicle owned by Dickens and driven by Gouge. The dis-positive issue was whether the vehicle was furnished for Gouge's

regular use within the meaning of an exclusion in plaintiff's policy; the undisputed facts showed that the vehicle was available to Gouge and used by Gouge on a daily basis for a period of approximately 8 weeks after his vehicle had burned. Although there was evidence that Gouge used the vehicle only with permission of the owner and primarily for her benefit, these allegations do not affect the availability of the vehicle to Gouge and his frequent use of the vehicle. Restrictions placed on the use of a vehicle may lead to a conclusion that the vehicle has not been furnished for the regular use of the non-owner in a particular case, but are not determinative.

Appeal by defendants Carolyn Walters and Randy Walters from judgment filed 10 January 2000 by Judge Richard D. Boner in Burke County Superior Court. Heard in the Court of Appeals 23 January 2001.

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by Rex C. Morgan and Kevin P. Branch, for plaintiff-appellee.*

*Smith, James, Rowlett & Cohen, L.L.P., by Norman B. Smith; and Wayne W. Martin, for defendant-appellants Carolyn Walters and Randy Walters.*

*Morris, York, Williams, Surles & Barringer, L.L.P., by Paul J. Osowski, for defendant-appellee Shane Gouge.*

GREENE, Judge.

Carolyn Walters and Randy Walters (collectively, Defendants) appeal an order filed 10 January 2000, granting summary judgment in favor of Nationwide Mutual Insurance Company (Plaintiff).

The record shows that on 1 February 1996, Defendants were involved in an automobile accident when Defendants' vehicle was struck by a vehicle driven by Shane Gouge (Gouge). Susan Dickens (Dickens) owned the vehicle driven by Gouge, and Dickens was a passenger in the vehicle when the accident occurred. As a result of the accident, Defendants filed a lawsuit against Gouge for personal injuries. At the time of the accident, Dickens' vehicle was covered under a North Carolina automobile liability insurance policy with limits of $25,000.00 per person and $50,000.00 per accident. Additionally, at the time of the accident, Gouge's parents were insured by an automobile liability policy issued by Plaintiff, and Gouge's father was

NATIONWIDE MUT. INS. CO. v. WALTERS

[142 N.C. App. 183 (2001)]

insured individually by a second automobile liability policy issued by Plaintiff. These policies (the Nationwide policies) provided coverage for "any auto" driven by a "family member" and the policies defined "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household."[1] Part B(B) of both Nationwide policies contained the following liability coverage exclusion:

> 1. Any vehicle, other than your covered auto, which is:
>
>> a. owned by you; or
>>
>> b. furnished for your regular use.
>
> 2. Any vehicle, other than your covered auto, which is:
>
>> a. owned by any family member; or
>>
>> b. furnished for the regular use of any family member.

The Nationwide policies did not define the term "regular use."

On 14 April 1999, Nationwide filed a declaratory judgment action seeking a declaration that the Nationwide policies "do not provide liability coverage in connection with the motor vehicle accident of February 1, 1996." The complaint alleged, in pertinent part:

> 8. Prior to the accident . . . , on November 24, 1995, . . . Gouge had been given possession of the [vehicle] owned by . . . Dickens for his regular use. From November 24, 1995 until February 1, 1996, . . . Gouge had maintained possession of the [vehicle], and it was furnished for his regular use by the [vehicle's] owner, . . . Dickens.
>
> . . . .
>
> 11. Under the [exclusions stated in Part B(B) of the Nationwide policies], [P]laintiff does not provide any liability coverage for . . . Gouge or any other person in connection with the accident set forth herein, because the vehicle which he was driving, the 1994 Mazda Pickup truck owned by . . . Dickens, had been furnished for his regular use since November 24, 1995 up until the date of the accident on February 1, 1996.

In an answer and counterclaim filed 5 May 1999, Defendants alleged that prior to the 1 February 1996 accident, Gouge had been

---

1. We note Plaintiff does not dispute Gouge was a "family member" within the meaning of the Nationwide policies at the time of the 1 February 1996 accident.

"permitted to make certain limited use of [Dickens' vehicle] under the supervision and control, and usually in the presence, of . . . Dickens." Defendants alleged: "Plaintiff wrongfully and without basis has contended that [Dickens' vehicle] was furnished by . . . Dickens for the regular use of . . . Gouge." Defendants, therefore, requested a declaratory judgment that the Nationwide policies issued by Plaintiff "do provide liability coverage in connection with the motor vehicle collision of February 1, 1996."

On 20 August 1999, Gouge gave deposition testimony regarding his use of Dickens' vehicle at the time of the accident. Gouge testified that he began using Dickens' vehicle sometime around Thanksgiving of 1995, because Gouge's vehicle had "burned" and he had returned a second vehicle that he had been leasing to the lessor. When asked how often he drove Dickens' vehicle after Thanksgiving of 1995, Gouge responded: "I drove it pretty much on a daily basis. I drove it driving [Dickens] back and forth to work, drove her kids to school, and then I pretty much drove it on a day to day basis, to the best that I can remember, every day." After Thanksgiving of 1995, Gouge kept the vehicle at his house. Dickens told Gouge he could "drive the [vehicle] pretty much as [he] needed to but that she had to have a way back and forth to work because that was her only vehicle." Gouge, therefore, "had to make sure that [he] was available to [Dickens] at all times when she needed the [vehicle]." Additionally, Gouge was not permitted to take the vehicle "four[-]wheeling" and Dickens would not have "permitted [him] to take another girl out in that [vehicle]." The vehicle, however, "was available to [him] for [his] use for anything that [he] needed to do other than four-wheeling, unless [Dickens] needed the vehicle." Gouge could not recall any occasions from Thanksgiving of 1995 until the day of the accident when Dickens needed to take possession of the vehicle; however, Dickens was with Gouge "at least 50 percent of the time" when he was driving the vehicle. Gouge also did not recall driving any vehicles other than Dickens' vehicle from Thanksgiving of 1995 until the date of the accident. Gouge testified he did not have to ask for Dickens' permission to use the vehicle, and it was his responsibility to put gasoline in the vehicle. Gouge stated he did not intend to use the vehicle for as long a period of time as he did.

On 27 September 1999, Plaintiff filed a motion for summary judgment on the ground "there are no genuine issues of material fact and . . . [P]laintiff is entitled to Declaratory Judgment in its favor as a matter of law."

In an affidavit filed 21 December 1999, Dickens made the following statements:

6. For the purpose of taking me to work, transporting the children, and being with me on weekends, I permitted . . . Gouge to use my . . . [vehicle] beginning sometime in the late fall of 1995. . . .

7. . . . Gouge did not have unrestricted use of my . . . [vehicle], and his use of it was primarily for the benefit of my son and me.

8. I did place certain restrictions on . . . Gouge's use of the [vehicle]. For example, he was forbidden to take it four[-]wheeling, something that . . . Gouge very much enjoyed doing and certainly would have done with the [vehicle] if I had not forbidden it. . . .

9. . . . [Gouge] had a clear understanding that he could not use my [vehicle] for the purpose of going out with another woman. . . .

10. Also it was the understanding by . . . Gouge and me that he could use my [vehicle] only in a limited geographical area. By no means was he free to take road trips or travel outside of Catawba and Burke Counties with this vehicle unless I accompanied him. . . .

. . . .

12. The [vehicle] clearly was not for . . . Gouge's personal use. He was not allowed to do whatever he pleased to do with it; and he and I both clearly understood that I could decide at any time that he would have no further access to this vehicle. I clearly had control of the vehicle the entire time.

13. . . . Gouge was required by me to check with me to see if I had any transportation needs, before he was allowed to use the vehicle for any purpose unrelated to the needs of my son and me. . . . Gouge's uses of the vehicle, when it was not for the purpose of benefitting my son and me, were occasional and infrequent.

. . . .

15. . . . Gouge and I had a strict understanding that his use of my [vehicle] was temporary and only for a brief and limited period of time. . . . It was initially my intention and belief that . . .

Gouge's use of my [vehicle] would only last for a few days, although, in fact, the period during which he used the vehicle stretched out longer than either of us had intended.

. . . .

17. . . . Gouge's use of the vehicle was not intended to be as a substitute vehicle for him, and the vehicle was not furnished for his regular use.

In an order filed 10 January 2000, the trial court granted summary judgment in favor of Plaintiff on the ground "there are no genuine issues of material fact, and Plaintiff is entitled to Declaratory Judgment in its favor as a matter of law." The trial court, therefore, ordered "that Plaintiff's policies of automobile liability insurance as referenced in the Complaint provide no liability coverage in connection with the accident of February 1, 1996."

---

The dispositive issue is whether the pleadings, affidavits, and deposition testimony raise a genuine issue of material fact regarding whether Dickens' vehicle was furnished for Gouge's "regular use" within the meaning of the Nationwide policies.

Automobile liability policies that provide coverage for non-owned autos are intended " 'to provide coverage to a driver without additional premiums, for the occasional or infrequent driving of an automobile other than his own.' " *Whaley v. Great American Ins. Co.*, 259 N.C. 545, 552, 131 S.E.2d 491, 496 (1963) (citations omitted). Policies that include coverage for non-owned autos, therefore, often exclude from coverage vehicles " 'furnished for the regular use of the insured.' " *Id.* (citations omitted). When a liability policy does not define the term "regular use," no "absolute definition" can be established and a determination of coverage under the policy must be based on the facts and circumstances of the case. *Id.* at 552, 131 S.E.2d at 496-97. The determination of whether a vehicle has been furnished for "regular use" must be based on the *"availability"* of the vehicle for use by the non-owner and "the *frequency of its use"* by the non-owner.[2] *Id.* at 554, 131 S.E.2d at 498; *Nationwide Mut. Ins. Co. v.*

---

2. Defendants argue in their brief to this Court that if the use and possession of a vehicle by a non-owner is "restricted," then the vehicle has not been furnished for the "regular use" of the non-owner. Although we agree with Defendants that restrictions placed on the use of a vehicle may lead to a conclusion in a particular case that the vehicle has not been furnished for the regular use of the non-owner, the restrictions placed on the use of the vehicle are relevant because they relate to the "availability" and "frequency of use" of the vehicle by the non-owner. *See, e.g., State Farm Mut.*

*Bullock*, 21 N.C. App. 208, 210, 203 S.E.2d 650, 652 (1974). The fact that the use of a vehicle by the non-owner requires the permission of the owner or is for the "principal purpose" of assisting the owner "affects neither the availability nor frequency of the use of th[e] . . . vehicle" by the non-owner. *Bullock*, 21 N.C. App. at 210-11, 203 S.E.2d at 652.

Where the language of an insurance policy is clear and unambiguous, "the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written." *Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 687, 443 S.E.2d 357, 359 (1994), *disc. review improvidently allowed*, 340 N.C. 353, 457 S.E.2d 300 (1995). Additionally, when the facts are undisputed, construction and application of the policy provisions to the undisputed facts is a question of law. *Id.* at 686, 443 S.E.2d at 359.

In this case, the undisputed facts show: Gouge began using Dickens' vehicle "on a daily basis" sometime around Thanksgiving of 1995; Gouge kept the vehicle at his house, and he could not recall driving any vehicles other than Dickens' vehicle from Thanksgiving of 1995 until the time of the accident; Gouge used the vehicle to drive Dickens to work and to drive Dickens' children to school; Gouge was required to make the vehicle available to Dickens "at all times when she needed the [vehicle]," but Gouge could not recall any times when Dickens needed to take possession of the vehicle for her use; Gouge was responsible for putting gasoline in the vehicle; and Gouge was restricted from using the vehicle for four-wheeling, taking women other than Dickens on dates, and taking the vehicle "outside of Catawba and Burke Counties . . . unless [Dickens] accompanied him." These undisputed facts show the vehicle was available to Gouge and used by Gouge on a daily basis for a period of approximately 8 weeks. Although Defendants presented evidence in Dickens' affidavit that Gouge used the vehicle only with the permission of Dickens and primarily for the benefit of Dickens, these allegations do not affect the availability of the vehicle to Gouge and his frequent use of the vehicle. *See Bullock*, 21 N.C. App at 210-11, 203 S.E.2d at 652. The undisputed facts, therefore, show Gouge had "regular use" of the vehicle

---

*Auto. Ins. Co. v. Branch*, 114 N.C. App. 234, 239, 441 S.E.2d 586, 589 (vehicle placed in "exclusive possession" of non-owner held furnished for the "regular use" of non-owner based on the *frequency* and *availability* of the use of the vehicle by the non-owner), *disc. review denied*, 336 N.C. 610, 447 S.E.2d 412 (1994). Accordingly, whether restrictions have been placed on the non-owner's use of the vehicle is not determinative of whether the vehicle has been furnished for the "regular use" of the non-owner.

within the meaning of the Nationwide policies at the time the 1 February 1996 accident occurred; thus, Gouge's use of the vehicle falls within the coverage exclusions of Part B(B) of the Nationwide policies. *See id.* at 209-10, 203 S.E.2d at 651-52 (defendant made "regular use" of vehicle where: defendant used the vehicle to transport its owner to medical appointments and to run errands for owner; defendant used the vehicle to drive herself to and from work; defendant usually received permission from the owner to use the vehicle for trips made for defendant's personal benefit; defendant kept the vehicle at her residence; and defendant paid for gasoline and oil for the vehicle). Accordingly, the trial court properly granted summary judgment in favor of Plaintiff. *See* N.C.G.S. § 1A-1, Rule 56(e) (1999).

Affirmed.

Judges HORTON and TYSON concur.