NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., PLAINTIFF
    v. DEBREILLE MORGAN AND MICHAEL E. BREEDLOVE, EXECUTOR FOR THE
    ESTATE OF NORA BREEDLOVE, DEFENDANTS

No. COA08-1206

(Filed 21 April 2009)

**Insurance— auto liability–regular use exception—inapplicability**

The driver of a vehicle involved in an accident while the owner was a passenger did not have the "regular use" of the passenger's vehicle within the meaning of an exclusion in the driver's automobile insurance policy which barred coverage for the use of any vehicle other than the covered automobile "furnished for your regular use," although the driver drove the vehicle three or

---

four times a week, where she never drove without the owner-passenger; the car was not regularly available to the driver and she did not keep the keys; she had no permission to take the vehicle for her personal errands; the car was almost always parked at the owner-passenger's house; and the owner-passenger took care of the maintenance of the vehicle.

Appeal by plaintiff from judgment entered 13 June 2008 by Judge James E. Hardin in Wake County Superior Court. Heard in the Court of Appeals 11 March 2009.

*Cranfill Sumner & Hartzog, LLP, by George L. Simpson, IV, for plaintiff-appellant.*

*Anderson & Anderson, by Michael J. Anderson, for defendant-appellee Debreille Morgan.*

*Royster, Cross & Hensley, LLP, by Dale W. Hensley, for defendant-appellee Michael E. Breedlove, Executor of the Estate of Nora Breedlove.*

BRYANT, Judge.

Farm Bureau appeals from an order entered 13 June 2008 in Wake County Superior Court which denied Farm Bureau's motion for summary judgment and granted summary judgment in favor of defendants Debreille Morgan (Morgan) and Michael E. Breedlove, executor for the estate of Nora Breedlove. For the reasons stated herein, we affirm.

On 14 July 2006, Nora Breedlove was involved in a two vehicle collision with Morgan on Capital Boulevard in Wake County. At the time of the collision, Breedlove was driving a car owned by Ellsworth Whitaker who was riding in the front passenger seat. Morgan filed a negligence action against Breedlove.

Whitaker's auto insurance carrier was Allstate Insurance Company. Breedlove maintained auto insurance coverage with Farm Bureau. Morgan requested that Farm Bureau participate in the settlement of the personal injury claim against Nora Breedlove's estate; however, Farm Bureau asserted that its policy did not provide coverage for the allegations made by Morgan against Breedlove.

On 4 January 2008, Farm Bureau initiated this action for declaratory judgment to determine whether its auto insurance policy

provided coverage for the claims alleged by Morgan against Breedlove. Morgan filed her answer on 30 January 2008 and Michael Breedlove, as executor of Nora Breedlove's estate, filed an answer on 3 March 2008. Both defendants requested that the trial court rule that the terms of the Farm Bureau policy covered Morgan's claims against Breedlove.

On 28 March 2008, Farm Bureau moved for summary judgment, and the motion was heard by the Honorable James E. Hardin on 12 June 2008. Judge Hardin entered an order on 13 June 2008 which denied Farm Bureau's motion and entered summary judgment for defendants. Farm Bureau appeals.

---

The sole issue on appeal is whether the trial court erred by granting defendant's motion for summary judgment based on the "regular use" exclusion contained in Breedlove's auto policy.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1 Rule 56(c) (2007).

"When the facts of a case are undisputed, construction and application of an insurance policy's provisions to those facts is a question of law. Because the trial court was only required to apply the law to the undisputed facts in this case, this case is appropriately resolved by summary judgment." See *McGuire v. Draughon*, 170 N.C. App. 422, 424-25, 612 S.E.2d 428, 430 (2005) (citation omitted). A trial court's grant of summary judgment is reviewed de novo. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

In *Whaley v. Great American Ins. Co.*, 259 N.C. 545, 131 S.E.2d 491 (1963), our Supreme Court stated that "regular use" does not have an "absolute definition" and "[e]ach case must be decided on its own facts and circumstances." *Id.* at 552, 131 S.E.2d at 496-97. When evaluating whether the conduct falls within the "regular use" exception of the insurance policy, the Court held that "coverage depends upon the availability of the [vehicle] for use by [the non-owner] and the frequency of its use by [the non-owner]." *Id.* at 545, 131 S.E.2d at 498 (emphasis omitted).

In *Nationwide Mut. Ins. Co. v. Walters*, 142 N.C. App. 183, 541 S.E.2d 773 (2001), this Court found that the non-owner made "regular

use" of the vehicle based on the test set forth in *Whaley*. In *Nationwide* the facts relied on by the Court were as follows: the non-owner kept the vehicle at his house; the non-owner drove the vehicle to the exclusion of all others daily for eight weeks; the non-owner used the vehicle to drive the owner to work and drive the owner's children to school; the non-owner was responsible for putting gasoline in the vehicle; and the non-owner did not have to give the car back to the owner during the eight weeks. *Id.* at 189, 541 S.E.2d at 776-77. We went on to note that although there was evidence the non-owner used the vehicle only with the permission of the owner and to the benefit of the owner, the facts did not negate the availability of the vehicle to the non-owner. *Id.* at 189, 541 S.E.2d at 777.

In *Nationwide Mut. Ins. Co. v. Bullock*, 21 N.C. App. 208, 203 S.E.2d 650 (1974), this Court, using the *Whaley* availability and frequency analysis, found that the non-owner made "regular use" of a vehicle where she used the vehicle to transport the owner to medical appointments and to run errands for the owner, used the vehicle to drive herself to and from work, usually received permission from the owner to use the vehicle for trips made for her personal benefit, kept the vehicle at her residence, and paid for gasoline and oil for the vehicle. *Id.* at. 209-10, 203 S.E.2d at 651. *See also Devine v. Aetna Casualty & Surety Co.*, 19 N.C. App. 198, 198 S.E.2d 471 (1973) (holding that continued possession and unrestricted use constitutes "regular use").

Here, Breedlove's auto policy barred coverage for "the ownership, maintenance or use of . . . [a]ny vehicle, other than your covered auto, which is . . . furnished for your regular use." However, the policy does not define "regular use."

After Whitaker's wife passed away, Breedlove and Whitaker became friends. Breedlove began to help Whitaker drive to various places around Raleigh and Durham because Whitaker was unfamiliar with the area and he was uncomfortable driving in traffic. By September 2005, Breedlove was driving Whitaker three or four times a week using Whitaker's car. Usually, Whitaker would drive his car and pick-up Breedlove at her house and then Breedlove would drive from there. Once in a while, Breedlove would drive her car to Whitaker's house and then they would drive from there. This driving arrangement was consistent until the accident in July 2006.

Although Whitaker's vehicle may have been frequently used by Breedlove because she often drove it three or four times a week, this

is not regular use as defined in our case law because the use fails the availability prong of *Whaley. See McGuire,* 170 N.C. App. at 426, 612 S.E.2d at 431 (declining to accept a bright line rule that equates "regular" with "daily," but rather finding that non-owners driving the vehicle two or three times per week for almost two years satisfies the frequency prong).

Whitaker's vehicle was not regularly available to Breedlove. Breedlove did not have keys to the car, and she never drove the car without him being present. Further, Breedlove did not have permission to take Whitaker's car for her personal errands. The car was parked at Breedlove's house only once or twice when they came home late at night, but the remainder of the time, Whitaker's car was parked at his house. Whitaker took care of the maintenance of the vehicle: he would get the car inspected and put gas in it when needed. This arrangement is different from that in prior cases in which the court has found regular use. *See McGuire,* 170 N.C. App. at 425, 612 S.E.2d at 431 (finding that vehicle was available to the non-owner based on facts showing the vehicle was left in a shared driveway between the owner and the non-owner's houses, the owner did not require the non-owner to ask permission before using the vehicle, the owner did not drive the vehicle herself, the owner allowed the non-owner to take the vehicle out of town, and the non-owner possessed a key to the car); and *North Carolina Farm Bureau Mut. Ins. Co. v. Warren,* 326 N.C. 444, 445, 390 S.E.2d 138, 139 (1990) (finding a van was available to the non-owner where she retained the keys and routinely kept the van in her driveway overnight between trips, even though "she was not permitted to use the van for personal business or pleasure"). *See also Walters,* 142 N.C. App. 183, 541 S.E.2d 773; and *Bullock,* 21 N.C. App. 208, 203 S.E.2d 650. *Compare Whisnant v. Nationwide Mut. Ins. Co.,* 264 N.C. 195, 141 S.E.2d 268 (1965) (not finding "regular use").

From these undisputed facts, Breedlove's activities do not fall within the "regular use" exception of her auto policy. Accordingly, the trial court correctly entered summary judgment in favor of defendants, and we therefore affirm the order of the trial court.

Affirmed.

Judges ELMORE and STEELMAN concur.