TA.Yi.on, Chief-Justice.
 

 The demurrer to this plea presents several questions to the consideration of the Court. The first is, whether the Company was legally Incorporated, inasmuch as the subscribers did not at the
 
 *12
 
 first general meeting after the return of the commissioners’ books, pay the sum of ten dollars each, as required.
 

 .
 
 ... . The circumstances which are to precede the mcorpo-ration of the Company are distinctly pointed out by the first section of the act of 1816. The only condition is, that when it appears to the commissioners that one hundred thousand dollars have been subscribed,
 
 then
 
 the subscribers, from the time of the first meeting, are declared to be incorporated$ they are
 
 then
 
 to perform several corporate acts, such as electing a President, Directors, and a Treasurer.
 

 By the fourth section of the act of 1812, for improving the navigation of the Itoanoke, several clauses of which are adopted as the basis of the Yadkin charter, each subscriber is directed to pay to the Treasurer of the Company, on the first general meeting, ten dollars on each
 
 share;
 
 so that the incorporation, and the appointment of officers, are antecedent to the payment of the ten dollars
 
 ;
 
 for how can that sum be paid to the Treasurer of the Company if it has no existence ? It would be to put a vain and absurd construction upon a law which is susceptible of a plain and sensible one.
 

 Further, the section last referred to, positively requires the payment of the money, “ shall paybut the consequence of not paying, the penalty attached to delinquents, is left discretionary with the Company, as to the time of its infliction $ the names of those who fail to pay “ may be struck off the books,” is the language employed to denote this discretion. What books ? — The answer is, the books of the corporation ; but if they were not incorporated they would have no such power.
 

 It seems evident that the Legislature fixed upon the
 
 subscription
 
 of a certain sum, and not the
 
 payment
 
 of it, as essential to the incorporation of the subscribers, who were completely clothed with the attributes of a corporate body, before the time when the payment was to be made. As such, they were fully competent to judge how
 
 *13
 
 far the situation and exigencies of the Company might call upon them for the vigorous and literal exercise of their right to demand money, and the supposition is in-admissibie that they were not equally capable of estimating the responsibility of the subscribers.
 

 ri'he constitutional objections appear-to ¡ne to be equally untenable. Exclusive emoluments and privileges may he granted in consideration of public services. The nature of such services, whether great or small, certain or contingent, is not a subject of judicial enquiry $ it properly belongs to, and may safely be entrusted with, legislative wisdom. Nor is this charter forbidden by that clause of the Declaration of flights which condemns monopolies and perpetuities. It requires no argument to prove that it is not included in the first term j and the other imports property locked up from the uses of the public* and which no person has power to alienate;. "Whatever emoluments are granted to these subscribers, the ¿.rent was made in contemplation of a great national benefit, to be derived from the union of their funds and intelligence; and under a certainty, that without such incitement, individual enterprise could not be raised into action, and the main services of the public property would continue as nature formed them. But others are not excluded from a participation in tiie profits
 
 -,
 
 for as the stockholders may transfer their shares, so every citizen, at his discretion, may invest his money in this property.
 

 If changing the place where the shares are to be sold, from Halifax to Salisbury, is seriously insisted on as an invasion (if chartered rights, it must be acknowledged that no one can be injured by it, and that its operation is altogether beneficial to the subscribers, the majority of whom, it may be supposed, live on the waters of the Yadkin. To require the President and Dir ectors to go to Halifax to conduct the sales, and the persons whose shares are sold to get the surplus, would have been an inconvenience to all concerned. It is merely the corree
 
 *14
 
 t¡0n of an error which crept into the first law, from inatl-vertently adopting the whole of the fourth section of the Roanoke act, which, fitly enough for that navigation, made Halifax the piece of sale, it would ill hecosne the gravity of a Court of Justice to pronounce this formal alteration, which could have no possible object in view but the benefit of the Company, to be an infringement of their rights. For these reasons, I am of opinion that the demurrer be sustained, and the judgment bs affirmed. ’
 

 Ham. and Henderson, Judges, concurred.
 

 Note. — Questions similar to those involved in this case, arose in a case which was also before the Court at this term, Yadkin Navigation Company
 
 v.
 
 Craig. The opinion of the Court, as reported above, applies with equal propriety to both cases.