INTEGON INDEMNITY CORPORATION, PLAINTIFF v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, CENTRAL MUTUAL INSURANCE COMPANY, AND GRIFFIN MOTOR COMPANY, INC., DEFENDANTS

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, THIRD-PARTY PLAINTIFF v. RANDALL BAUCOM, THIRD-PARTY DEFENDANT

No. COA97-385

(Filed 3 November 1998)

## 1. Insurance— car rental agreement—disavowal of liability—disapproved

Language in a car rental agreement purporting to disavow provision of liability insurance in "consideration" of the lessee's acknowledgment of complete liability was disapproved. N.C.G.S. § 20-279.21 and N.C.G.S. § 20-281 specifically and unambiguously impose upon Griffin, as a corporation in the business of leasing or renting automobiles, the obligation to provide certain minimal insurance.

## 2. Insurance— rental car policies—excess and primary

In a declaratory judgment action arising from an automobile accident involving a rental car in which the victim's insurer, Central, brought a subrogation action, the trial court erred by declaring that Integon (the driver's insurer) provided primary coverage and that Universal (the rental company's insurer) provided excess coverage. Under the "our share" and "most we will pay" provisions of the Integon and Universal policies respec-

tively, Integon and Universal are liable to Central in pro rata shares up to the minimum limits required by the Financial Responsibility Act.

Appeal by plaintiff and defendant from order entered 31 December 1996 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 20 November 1997.

*Michael R. Greeson, Jr., for plaintiff-appellant.*

*Kilpatrick Stockton LLP, by James H. Kelly, Jr., and Susan H. Boyles, for defendant-appellant Universal Underwriters Insurance Company*

JOHN, Judge.

In this declaratory judgment action, plaintiff Integon Indemnity Corporation (Integon) and defendant and third-party plaintiff Universal Underwriters Insurance Company (Universal) each appeal the trial court's 31 December 1996 order. The court ruled that an automobile insurance policy issued by Integon furnished primary coverage and a policy issued by Universal provided excess coverage for claims arising out of a 19 May 1995 motor vehicle collision involving third-party defendant Randall Baucom (Baucom). For the reasons set forth below, we reverse the order of the trial court.

Pertinent facts and procedural history include the following: On 18 May 1995, Baucom rented a Pontiac automobile from defendant Griffin Motor Company, Inc. (Griffin), a corporation engaged in leasing and renting automobiles. At that time, Baucom was insured by Integon under an automobile liability policy (the Integon policy) providing bodily injury coverage in the amount of $25,000 per person and $50,000 per accident, and $15,000 for property damage.

The Integon policy covered "damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident." An "insured" was defined as "[y]ou or any **family member** for the ownership, maintenanance [sic] or use of any auto or **trailer**." The policy further provided:

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Baucom executed a written rental agreement with Griffin which included the following language:

> The undersigned hereby acknowledges that the lessor is not providing any type of insurance protection or collecting any charges therefor. In consideration of the foregoing acknowledgment the undersigned agrees to pay for all loss and damage to the described automobile and to hold Lessor harmless from any liability as a result of the lessee's usage thereof.

Baucom further represented in the rental agreement that he was insured under the Integon policy.

On 19 May 1995 in Myrtle Beach, South Carolina, Baucom was involved in an automobile collision with a vehicle owned and operated by James Wooten (Wooten), and insured by defendant Central Mutual Insurance Company (Central). Central tendered payment to Wooten and his passengers under its policy, and thereafter instituted a subrogation claim in Union County to recover the amount of its payments from Baucom and Griffin.

At the time of the collision, Griffin was insured under a policy issued by Universal (the Universal policy), known as a "fleet insurance policy," covering Griffin's changing inventory of vehicles. The Universal policy included an endorsement, entitled "RENTAL AND LEASING AUTOS EXCLUDED," which read as follows:

> No insurance is provided by this Coverage Part on any AUTO owned by an AUTO manufacturer (or any of its subsidiaries or affiliated companies) and rented or leased by YOU to others. No insurance is provided by this Coverage Part on any AUTO owned or leased by YOU and used in connection with any such rental or leasing operations.

However, with respect to auto hazards, the Universal policy included as encompassed within its definition of "WHO IS AN INSURED,"

> (4) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

The Universal policy also stated:

> With respect to part (4) of WHO IS AN INSURED, the most WE will pay in the absence of any other applicable insurance, is the minimum limits required by the Motor Vehicle Laws of North

Carolina. When there is other applicable insurance, WE will pay only OUR pro rata share of such minimum limits.

Integon, the insurer of Baucom as defendant in the Union County subrogation action, instituted the instant declaratory judgment action 3 May 1996, seeking judicial determination "that the coverage provided by [Universal, the insurer of Griffin as defendant in the Union County action] [wa]s primary to [the extent of] the limits of liability" required by law. Universal denied liability and maintained the Integon policy was the only coverage required either by law or by the terms of the policies at issue.

Universal and Integon each moved for summary judgment. Following a hearing and in an order entered 31 December 1996, the trial court declared that the Integon policy "provide[d] primary coverage for the accident on May 19, 1995, up to the stated limits of its policy." The court further stated that the Universal policy "provide[d] excess coverage for any claims against Randall Baucom arising out of the accident on May 19, 1995, under the Financial Responsibility Act." Both Universal and Integon filed timely notice of appeal.

On appeal, Integon asserts the trial court erred in adjudging the coverage afforded by the Integon policy regarding the 19 May 1995 collision as "primary," *i.e.*, exclusive to the extent of its policy limits of any other available coverage, specifically that set forth in the Universal policy. Universal contends the trial court properly designated Integon's coverage as "primary," but disagrees with the determination that its policy provided excess coverage.

Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits show the movant is entitled to judgment as a matter of law. N.C.R. Civ. P. 56(c); *State Farm Mut. Automobile Ins. Co. v. Branch*, 114 N.C. App. 234, 237, 441 S.E.2d 586, 588, *disc. review denied*, 336 N.C. 610, 447 S.E.2d 412 (1994). The meaning of specific language used in a policy of insurance is a question of law, *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970), and summary judgment may be granted in a declaratory judgment action. *Threatte v. Threatte*, 59 N.C. App. 292, 294, 296 S.E.2d 521, 523 (1982), *appeal dismissed*, 308 N.C. 384, 302 S.E.2d 226 (1983). The scope of appellate review thereof is the same as for other actions. N.C.G.S. § 1-258 (1996); *Dickey v. Herbin*, 250 N.C. 321, 325, 108 S.E.2d 632, 635 (1959).

"The avowed purpose of the Financial Responsibility Act . . . is to compensate the innocent victims of financially irresponsible

motorists." *American Tours, Inc. v. Liberty Mutual Ins. Co.*, 315 N.C. 341, 346, 338 S.E.2d 92, 96 (1986). Two statutory sections, N.C.G.S. § 20-279.21(b)(2) (Cum. Supp. 1997) and N.C.G.S. § 20-281 (1993), govern the obligation of an automobile lessor such as Griffin to insure lessees of its vehicles. *Hertz Corp. v. New South Ins.*, 129 N.C. App. 227, 497 S.E.2d 448, 449-50. G.S. § 20-281 "accommodates" G.S. § 20-279.21, which is part of the Motor Vehicle Safety and Financial Responsibility Act (FRA) (N.C.G.S. §§ 20-279.1-20.319 (1993)). *Jeffreys v. Snappy Car Rental, Inc.*, 128 N.C. App. 171, 172, 493 S.E.2d 767, 768-69 (1997), *disc. review denied*, 348 N.C. 73, ——— S.E.2d ———, (1998).

G.S. § 20-179.21(b)(2) mandates that motor vehicle owners purchase liability insurance which

> [s]hall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, or any other persons in lawful possession, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . .

G.S. § 20-279.21(b)(2). G.S. § 20-281 obligates "any person, firm or corporation . . . engag[ing] in the business of renting or leasing motor vehicles to the public" to obtain liability insurance

> insuring the owner and rentee or lessee . . . against loss from any liability imposed by law for damages . . . for care and loss of services because of bodily injury to or death of any person and injury to or destruction of property caused by accident arising out of the operation of such motor vehicle . . . .

G.S. § 20-281. Both sections require the identical minimum limit of insurance, *see Hertz,* 129 N.C. App. at ———, 497 S.E.2d at 450, *i.e.*, coverage in the amounts of $25,000 for bodily injury or death of one person in any one accident, $50,000 for bodily injury or death of two or more persons in any one accident, and $15,000 for injury to or destruction of property of others in any one accident (25/50/15). *See* G.S. § 20-279.21(b)(2) and G.S. § 20-281.

[1] Preliminarily, we express our disapproval of the language in Griffin's rental agreement purporting to disavow provision of liability insurance in "consideration" of the lessee's acknowledgment of complete liability. G.S. § 20-279.21 and G.S. § 20-281 specifically and

unambiguously impose upon Griffin, as a corporation in the business of leasing or renting automobiles, the obligation to provide certain minimal insurance. Indeed, Universal acknowledges that "if . . . Baucom did not have his own insurance [policy], G.S. § 20-281 would [have] required [Griffin Motor Company] to provide 25/50/15 coverage" on the rental vehicle." *See Ins. Co. of North America v. Aetna Life & Casualty Co.*, 88 N.C. App. 236, 242-43, 362 S.E.2d 836, 840 (1987), *disc. review denied*, 321 N.C. 743, 366 S.E.2d 860 (1988) (rental company's policy must provide minimum coverage to unauthorized driver under § 20-281 where no other coverage existed).

[2] We turn now to the issues at hand. Initially, we observe that Integon sought a declaration in the instant suit that "coverage provided by [Universal] is primary to the limits of liability" provided by law. In its appellate brief, however, Integon makes no reference to the "our share" provision of the Integon policy, and relies almost entirely on the decision of our Supreme Court in *Integon Indemnity Corp. v. Universal Underwriters Ins. Co.*, 342 N.C. 166, 463 S.E.2d 389 (1995) (*Integon I*). We do not read that decision to support Integon's position.

On the other hand, Universal in sum asserts it was absolved of liability because Baucom individually maintained the Integon policy meeting the minimum requirements of the FRA. *Integon I* also fails to support Universal's contention, this precise argument having been rejected when previously advanced therein by Universal.

In *Integon I*, Integon and Universal disputed the issue of coverage under circumstances analogous to those *sub judice*. An automobile dealership loaned an automobile to Allen and Hope Bridges (the Bridges), whose daughter subsequently was involved in a collision while operating the vehicle with her parents' permission. *Id.* at 167, 463 S.E.2d at 490. At the time of the accident, the Bridges were covered by an Integon policy in the minimum amounts required by law, and the automobile dealership was insured under a policy issued by Universal (the *Integon I* Universal policy). *Id.* at 167-68, 463 S.E.2d at 490.

Similar to the Universal policy herein, the *Integon I* Universal policy extended liability coverage, among others, to:

[a]ny other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

*Id.* at 169, 463 S.E.2d at 391. As a permissive user of the dealership's vehicle, the Bridges' daughter was thereby provided coverage by the *Integon I* Universal policy maintained by the dealership "unless [that policy] contain[ed] language limiting or excluding coverage." *Id.*

Regarding the question of limitation, the Court examined the "most we will pay" provision in the *Integon I* Universal policy, identical to that contained in the Universal policy herein, which provided:

> the most WE will pay in the absence of any other applicable insurance, is the minimum limits required by the Motor Vehicle Laws of North Carolina. When there is other applicable insurance, WE will pay only OUR pro rata share of such minimum limits.

*Id.* at 169-170, 463 S.E.2d at 391. Because the Bridges' daughter carried other applicable insurance, the Court reasoned that "under the terms of [its] policy, Universal [wa]s responsible for a pro rata share of the minimum limits." *Id.* at 170, 463 S.E.2d at 392.

In *Integon I*, Universal unsuccessfully maintained that because the Bridges' daughter was insured under other policies which met the minimum requirements of the Financial Responsibility Act, she was not an individual "required by law" to be insured by Universal. *Id.* Universal in essence resurrects the same argument herein by contending the Integon policy alone completely satisfied the requirements of the FRA and that § 20-281 imposes no additional requirements on an automobile lessor when the lessee otherwise has available 20/50/15 coverage. Therefore, Universal concludes, the instant Universal policy afforded no liability coverage for claims arising out of the 19 May 1995 collision.

This argument is virtually indistinguishable from that rejected by our Supreme Court in *Integon I*. *See id.*, 463 S.E.2d at 391-92 (noting its earlier holding that an individual operating an automobile with the owner's permission was an individual "required by law" to be insured, the Court "disagreed[d] with Universal's argument that its policy precludes coverage to a driver 'required by law' to be an insured when the driver already has sufficient liability coverage"). As in the "most we will pay" provision of the *Integon I* Universal policy, the instant Universal policy expressly and unambiguously recited its agreement to pay a pro rata share. *See id.*, 463 S.E.2d at 392.

Notwithstanding, Universal insists, as it did in *Integon I*, that the holding of *United Services Auto. Assn. v. Universal Underwriters*

*Ins. Co.*, 332 N.C. 333, 420 S.E.2d 155 (1992) requires a different result. Our Supreme Court determined *United Services* to be distinguishable, *Integon I*, 342 N.C. at 171-72, 463 S.E.2d at 392-93, and neither Universal nor the instant circumstances offer any basis for relieving us of our obligation to follow that directive. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (this Court required to follow decisions of our Supreme Court until that Court rules otherwise).

As our Supreme Court observed,

> [t]he Universal policy at issue in *United Services* clearly limited liability coverage for individuals "required by law" to be an insured to "only the amount (or amount in excess of any other insurance available to them) needed to comply with the minimum limits" of any applicable law.

*Integon I*, 342 N.C. at 172, 463 S.E.2d at 392. However, the *Integon I* Universal policy, as well as that herein, contained "significant differences," *id.* at 171, 463 S.E.2d at 392, namely the agreement of Universal, in the event of other applicable insurance, to be responsible for its pro rata share of the minimum limits required by law. *See id.*, 463 S.E.2d at 393.

Universal attempts to distinguish *Integon I* as involving a loaned vehicle whereas the instant case concerns a rental automobile. Suffice it to state this constitutes a distinction without a difference, at least in terms of analyzing the identical policy provisions concerned.

Finally, Universal argues *Integon I* does not control because of the specific exclusion for rental vehicles in the Universal policy *sub judice*. We disagree.

As discussed above and conceded by Universal, Griffin is obligated as a matter of law to provide liability insurance for its lessees. *See* G.S. § 20-281. Griffin presented the Universal policy as its applicable coverage, and the statutory requirements must be read into the policy. *See Brown v. Truck Ins. Exch*ange, 103 N.C. App. 59, 64, 404 S.E.2d 172, 175 (provisions of the FRA are written into every automobile liability policy as a matter of law and where provisions of insurance policy conflict with provisions of the FRA, the statute prevails), *disc. review denied*, 329 N.C. 786, 408 S.E.2d 515 (1991) and *American Tours*, 315 N.C. at 344, 338 S.E.2d at 95 ("[w]hen a statute is applicable to the terms of a policy of insurance, the pro-

INTEGON INDEM. CORP. v. UNIVERSAL UNDERWRITERS INS. CO.

[131 N.C. App. 267 (1998)]

visions of that statute become part of the terms of the policy to the same extent as if they were written in it"). While an automobile owner's policy may "exclude coverage in the event the driver of a vehicle is covered under some other policy for the minimum amount of liability coverage" required by the FRA, *see Jeffreys*, 128 N.C. App. at 172-73, 493 S.E.2d at 769, that is not the circumstance *sub judice*. The Universal policy provides that it will pay its pro rata share when those required by law to be insured (here, Baucom) have other applicable insurance.

Prior to concluding our discussion of Integon's appeal, we note it has advanced no argument asserting application in the instant case of the coverage limitation in the Integon policy "for a vehicle you do not own" to the "excess over any other collectible insurance." Accordingly, we have not addressed, nor do we express any opinion, as to the effect of this provision upon our analysis herein. *See In re Appeal of Mount Shepherd Methodist Camp*, 120 N.C. App. 388, 390, 462 S.E.2d 229, 231 (1995) (appellate review "limited to the . . . arguments presented in the briefs to this Court"), and N.C.R. App. P. 28(a) ("[r]eview . . . limited to questions . . . presented in the several briefs").

In short, under *Integon I* and the "our share" and "most we will pay" provisions of the Integon and the Universal policies respectively, Integon and Universal are liable to Central in pro rata shares up to the minimum limits required by the FRA for claims arising out of the 19 May 1995 automobile collision involving Baucom. Accordingly, the trial court's declaration that the Integon policy provided "primary" coverage is reversed.

In its appeal, Universal cites as error the trial court's ruling that the Universal policy provided "excess coverage." In view of our holding above, we likewise reverse this portion of the trial court's order.

Reversed.

Judges MARTIN, John C. and SMITH concur.