STATE OF NORTH CAROLINA v. DUDLEY WEBB

No. 157PA03

(Filed 6 February 2004)

**Constitutional Law— indigent defendants—court-appointed counsel—appointment fee—constitutionality**

The appointment fee required by N.C.G.S. § 7A-455.1 in order for an indigent defendant to obtain court-appointed counsel regardless of the outcome of the criminal proceeding is a cost of prosecution that violates the language of Art. I, § 23 of the N.C. Constitution prohibiting the assessment of costs against acquitted defendants. However, the unconstitutional portions of the statute requiring payment of the fee "at the time of appointment" and "regardless of the outcome of the proceedings" and granting a credit to any defendant who pays the fee prior to the final determination of the action may be severed so that the rest of the statute remains enforceable and constitutionally permits the State to continue collecting the fee from indigent defendants after they have been convicted or pled guilty or nolo contendere.

On writ of certiorari issued 2 April 2003 pursuant to N.C.G.S. § 7A-32(b) to review an order entered 4 March 2003 and an amended order entered 19 March 2003 by Judge Orlando F. Hudson, Jr., in Superior Court, Durham County, declaring N.C.G.S. § 7A-455.1 unconstitutional and enjoining the Clerk of Superior Court for said county from collecting the appointment fee and entering civil judgments pursuant to N.C.G.S. § 7A-455.1(b). Heard in the Supreme Court 11 September 2003.

*Roy Cooper, Attorney General, by Norma S. Harrell, Special Deputy Attorney General, for the State-appellant.*

*Robert Brown, Jr., Public Defender; Heather H. Freeman, Assistant Public Defender; and C. Scott Holmes, for defendant-appellee.*

*Seth H. Jaffe, Counsel; and Kurtz & Blum, PLLC, by Howard A. Kurtz and Paula K. McGrann, on behalf of the American Civil Liberties Union of North Carolina Legal Foundation, Inc., amicus curiae.*

STATE v. WEBB

[358 N.C. 92 (2004)]

EDMUNDS, Justice.

On 10 December 2002, an order for the arrest of Dudley Cedrick Webb (defendant) was issued, alleging that he had violated the terms of his probation. Defendant requested and received appointed counsel as an indigent and, pursuant to N.C.G.S. § 7A-455.1, thereupon became obligated to pay a fifty dollar "appointment fee" regardless of the outcome of his criminal proceedings. Defendant filed a motion in Superior Court, Durham County, to declare the statute unconstitutional, alleging that this appointment fee violated the Fourteenth Amendment of the United States Constitution.

After conducting a hearing in which arguments for both sides were presented, the trial court found that the appointment fee violated not only the United States Constitution but also Article I, Section 23 of the North Carolina Constitution. On 19 March 2003, the trial court entered an amended order declaring N.C.G.S. § 7A-455.1 unconstitutional and enjoining the clerk of superior court from collecting the appointment fee or entering judgments for the fee. On 2 April 2003, this Court issued a writ of supersedeas staying enforcement of the trial court's order. We affirm the decision of the trial court, as modified.

Section 7A-455.1 requires any indigent defendant who requests the appointment of counsel to pay a non-refundable fifty dollar appointment fee regardless of the outcome of the criminal proceedings. N.C.G.S. § 7A-455.1(a), (b) (Supp. 2002). Forty-five dollars of the appointment fee is allocated to the Indigent Persons' Attorney Fee Fund and the remaining five dollars goes to the Court Information Technology Fund. N.C.G.S. § 7A-455.1(f). Section 7A-455.1 became effective 1 December 2002. Act of Dec. 1, 2002, ch. 126, sec. 24A.9(c), 2002 N.C. Sess. Laws 291, 495. Although the fee is payable at the time of appointment, "[i]nability, failure, or refusal to pay the appointment fee shall not be grounds for denying appointment of counsel, for withdrawal of counsel, or for contempt." N.C.G.S. § 7A-455.1(d). If this appointment fee is paid prior to the final determination of the action at the trial level, it is credited against any attorney's fees due. However, if the appointment fee is paid after final determination of the case, it is added to any attorney's fees due and is collected in the same manner as attorney's fees. N.C.G.S. § 7A-455.1(b). If no attorney's fees are owed after final determination of the action, the appointment fee is reduced to judgment and constitutes a lien. *Id.* Thus, under this statute, a defendant who

pays the appointment fee before the resolution of his or her case obtains an appreciable benefit.

"Although there is a strong presumption that acts of the General Assembly are constitutional, it is nevertheless the duty of this Court, in some instances, to declare such acts unconstitutional." *Stephenson v. Bartlett*, 355 N.C. 354, 362, 562 S.E.2d 377, 384 (2002). In determining the constitutionality of N.C.G.S. § 7A-455.1 under the Constitution of North Carolina, the dispositive issue is whether the appointment fee is a "cost" imposed in violation of Article I, Section 23, which provides that "[i]n all criminal prosecutions, every person charged with [a] crime has the right . . . not [to] be compelled to . . . pay costs, jail fees, or necessary witness fees of the defense, unless found guilty." N.C. Const. art. I, § 23. We are guided by the basic principle of constitutional construction of " 'giv[ing] effect to the intent of the framers.' " *Perry v. Stancil*, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) (quoting 11 Am. Jur. *Constitutional Law* § 61 (1937)). "Constitutional provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption. To ascertain the intent of those by whom the language was used, we must consider the conditions as they then existed and the purpose sought to be accomplished." *Id.* Accordingly, we review the history of this provision.

Prior to 1868, "criminal defendants in North Carolina were obliged to pay costs even if acquitted." John V. Orth, *The North Carolina State Constitution: A Reference Guide* 66 (Greenwood Press 1993) [hereinafter *Orth*] (citing *State v. Hodson*, 74 N.C. 151 (1876)). In that year, the people of North Carolina ratified a new Constitution, which provided that "[i]n all criminal prosecutions, every [person] has the right . . . not [to] be compelled . . . to pay costs, jail fees, or necessary witness fees of the defen[s]e, unless found guilty." N.C. Const. of 1868, art. I, § 11. This provision, sparing the accused some of the expenses associated with establishing his or her innocence, was included in the 1868 Constitution because no basis existed for requiring an accused to bear the costs incurred by the State in its unsuccessful prosecution. *Orth.* Thereafter, costs of prosecution "incurred in the conduct of the prosecution and making it effectual in a verdict" devolved upon the accused only upon conviction. *State v. Wallin*, 89 N.C. 578, 580 (1883). Article I, Section 11 of the 1868 Constitution was incorporated into the 1971 Constitution without material variance as Article I, Section 23.

**STATE v. WEBB**

[358 N.C. 92 (2004)]

The State contends that the appointment fee is not a cost of prosecution, but instead consists in part of an attorney's fee and in part of an administrative fee, together intended to defray the costs of providing counsel to indigents, and collectively constitutional. Under this theory, the appointment fee properly may be charged to any criminal defendant, acquitted or convicted.

We begin our analysis by considering whether a portion of the appointment fee can be considered an attorney's fee. Attorney's fees are "charge[s] to a client for services performed *for the client*." *Black's Law Dictionary* 125 (7th ed. 1999) (emphasis added). The forty-five dollars of the appointment fee that is paid to the Indigent Persons' Attorney Fee Fund does not fall within this definition because it is not directly related to the individual defendant who is resisting prosecution or defending against a particular criminal charge. Instead, the appointment fee has a more general purpose. North Carolina, like every other jurisdiction, has a constitutional duty to provide court-appointed counsel to an indigent defendant upon request. *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963); *see also* N.C.G.S. §§ 7A-450(b), -498.1 (2003). The expense to the State of providing such counsel is an "unavoidable consequence[] of a system of government which is required to proceed against its citizens in a public trial in an adversary proceeding." *Schilb v. Kuebel*, 404 U.S. 357, 378, 30 L. Ed. 2d 502, 518 (1971) (Douglas, J., dissenting). The appointment fee helps support that part of the criminal justice system that enables the State constitutionally to prosecute indigent defendants who qualify for court-appointed counsel. Article I, Section 23 does not insulate acquitted defendants from bearing the burden of paying for their own counsel, but it does shield an acquitted defendant from having to pay for a system designed to reimburse the State for expenses necessarily "incurred in the conduct of the prosecution." *State v. Wallin*, 89 N.C. at 580. Because the appointment fee functions to reimburse the State for expenses associated with keeping its system that provides for court-appointed counsel operational, we believe that this portion of the appointment fee is a cost of prosecution. Therefore, the appointment fee cannot be characterized as being, in part, an attorney's fee.

We next consider the State's characterization of the appointment fee as, in part, an administrative fee. The State relies on *Schilb v. Kuebel*, 404 U.S. 357, 30 L. Ed. 2d 502, for the proposition that administrative fees are separate from costs of prosecution and, as such, can be imposed upon acquitted defendants. However, *Schilb* is distin-

guishable as to this issue. Under the statute in question in that case, the State of Illinois retained a small portion of bail posted by some criminal defendants, whatever the outcome of the case. In declining to nullify the statute, the United States Supreme Court noted that defendants had the choice of posting a property bond, a cash bond in the full amount, or a percentage of the cash bond, and that a portion was retained only when the defendant elected to post a percentage of the cash bond. *Schilb v. Kuebel*, 404 U.S. at 366, 30 L. Ed. 2d at 512. Thus, only those Illinois defendants who sought the benefit of posting a percentage were required to pay the administrative costs. *Schilb v. Kuebel*, 404 U.S. at 370-71, 30 L. Ed. 2d at 514. In contrast, an indigent defendant in North Carolina who seeks court-appointed counsel has no alternative that would allow him or her to avoid paying the appointment fee. Consequently, we do not believe that *Schilb* controls.

We find more useful direction by analogizing this part of the appointment fee to the "facilities fee," which is a cost imposed upon a defendant who is convicted or enters a plea of guilty or nolo contendere in a criminal action. N.C.G.S. § 7A-304(a)(2) (2003). The facilities fee reimburses counties for "providing, maintaining, and constructing adequate courtroom and related judicial facilities." *Id.* Even though the facilities fee is purely administrative in nature, because it is considered a cost of prosecution, it is not assessed unless the defendant is convicted. *Id.*

We believe that the five dollars of the appointment fee allocated to the Court Information Technology Fund is effectively indistinguishable from the facilities fee. The appointment fee operates to "supplement funds otherwise available to the Judicial Department for court information technology and office automation needs," thus defraying expenses incurred by the State in the operation and maintenance of the court system. N.C.G.S. § 7A-343.2 (2003). Accordingly, it should be assessed in the same manner as the facilities fee and any other cost of prosecution—against convicted defendants only.

We recognize that our historical consideration of this issue has some limitations because the State was not required to provide counsel to indigent defendants at the time of the 1868 Constitution. However, Article I, Section 11 of that Constitution was adopted to relieve acquitted defendants from bearing the burden of paying costs of prosecution. The subsequent United States Supreme Court decision in *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, requiring that states provide court-appointed counsel for indigent criminal

**STATE v. WEBB**

[358 N.C. 92 (2004)]

defendants, did not affect the purposes for which that section was enacted. Inclusion thereafter of virtually identical language in Article I, Section 23 of the 1971 Constitution convincingly demonstrates North Carolina's continuing dedication to the principle that acquitted defendants should not be required to pay the costs of their prosecution. Thus, requiring acquitted defendants to pay the appointment fee, which we have determined is a cost of prosecution, would defeat the intent and purpose of either Constitution's provision.

The results yielded by our historical review is consistent with a plain meaning analysis. "Issues concerning the proper construction of the Constitution of North Carolina 'are in the main governed by the same general principles which control in ascertaining the meaning of all written instruments.' " *State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 478 (1989) (quoting *Perry v. Stancil*, 237 N.C. at 444, 75 S.E.2d at 514). "In interpreting our Constitution—as in interpreting a statute—where the meaning is clear from the words used, we will not search for a meaning elsewhere." *Id.* at 449, 385 S.E.2d at 479.

The plain meaning of words may be construed by reference to " 'standard, nonlegal dictionaries.' " *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 152, 388 S.E.2d 557, 568 (1990) (quoting *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966)). Where appropriate, including earlier in this opinion, this Court has consulted *Black's Law Dictionary. See, e.g., Hieb v. Lowery*, 344 N.C. 403, 410, 474 S.E.2d 323, 327 (1996). *Black's Law Dictionary* defines "costs" as "[f]ees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or court rule; e.g.[,] filing and service fees." *Black's Law Dictionary* 346 (6th ed. 1990). The appointment fee in this case embodies all the substantive characteristics of a "cost" as used within this definition and the meaning of Article I, Section 23. It is a fixed amount, imposed by statute, required to be paid to the courts.

The State contends that the General Assembly's use of the term "fee" indicates the appointment fee is not a cost. However, merely calling the appointment fee a "fee" is not controlling where every aspect of the amount in question is one associated with a cost. *See* William Shakespeare, *Romeo and Juliet* act 2, sc. 2, 48-49. In fact, each amount listed on the Criminal Bill of Costs submitted in a criminal matter is denominated a "fee," for example, process fee, general court of justice fee, facilities fee. These fees are, like costs, imposed

only upon convicted defendants. Furthermore, *Black's Law Dictionary's* definition of "costs" includes "fees" as a synonym. *Black's Law Dictionary* 346 (6th ed. 1990). Consequently, we do not find that the use of the term "fee" determines the true nature of the appointment fee.

The plain language of Article I, Section 23 prohibiting the assessment of costs against acquitted defendants thus encompasses the appointment fee. By requiring payment of the appointment fee by acquitted defendants, the General Assembly devised a statutory framework that does not comport with the constitutional limitation prohibiting a criminal defendant from paying costs unless found guilty, and as such it may not stand. Accordingly, we hold that the appointment fee set out in N.C.G.S. § 7A-455.1 is a cost of prosecution and may not be imposed upon a defendant in a criminal matter until that defendant has been convicted or pled guilty or nolo contendere.

We next consider whether the unconstitutional portions of N.C.G.S. § 7A-455.1 can be severed so that the rest of the statute remains enforceable. These portions are those requiring payment "at the time of appointment," N.C.G.S. § 7A-455.1(a), "regardless of the outcome of the proceedings," and the relevant provisions granting a credit to any defendant who pays the appointment fee prior to the final determination of the action, N.C.G.S. § 7A-455.1(b).

The following test is used to determine whether severability is permissible:

> The test for severability is whether the remaining portion of the legislation can stand on its own and whether the General Assembly would have enacted the remainder absent the offending portion. *See, e.g., Jackson v. Guilford Cty. Bd. of Adjust.*, 275 N.C. 155, 168, 166 S.E.2d 78, 87 (1969) ("When the statute, . . . [can] be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the remainder alone."). Additionally, the inclusion of a severability clause within legislation will be interpreted as a clear statement of legislative intent to strike an unconstitutional provision and to allow the balance to be enforced independently. *Fulton Corp. v. Faulkner*, 345 N.C. 419, 421, 481 S.E.2d 8, 9 (1997).

*Pope v. Easley*, 354 N.C. 544, 548, 556 S.E.2d 265, 268 (2001).

We note that Session Law 2002-126, which added the appointment fee to Chapter 7A of the North Carolina General Statutes, contains a severability clause that provides that "[i]f any section or provision of this act is declared unconstitutional or invalid by the courts, it does not affect the validity of this act as a whole or any part other than the part so declared to be unconstitutional or invalid." Ch. 126, sec. 31.6, 2002 N.C. Sess. Laws at 511. The inclusion of section 31.6 evinces an unmistakable legislative intent that the remaining portions of section N.C.G.S. § 7A-455.1 should continue in effect, if possible. *See In re Appeal of Springmoor, Inc.*, 348 N.C. 1, 13, 498 S.E.2d 177, 184-85 (1998).

First, we must consider whether the portion of N.C.G.S. § 7A-455.1(b) requiring payment of the appointment fee "regardless of the outcome of the proceedings" can be severed. Although we determined above that payment of the appointment fee by an acquitted defendant is unconstitutional under Article I, Section 23, payment of costs of prosecution, including the appointment fee, by a convicted defendant is consistent with that section. The General Assembly, by enacting this statute, intended to recoup some of the expenses incurred in providing court-appointed counsel to indigent defendants. Severing the offending portion enables the State to continue collecting the appointment fee from convicted defendants, thereby fulfilling the intent of the legislature. Accordingly, the portion of N.C.G.S. § 7A-455.1(b) requiring payment "regardless of the outcome of the proceedings" shall be severed in order to allow the State to assess the appointment fee against convicted defendants as constitutionally allowed under Article I, Section 23.

Next, we consider whether the statutory provision in N.C.G.S. § 7A-455.1(a) requiring payment "at the time of appointment" must be severed. To require payment of the appointment fee "at the time of appointment" is inconsistent with our holding today that the appointment fee is a cost. Pursuant to section 7A-304, costs in criminal actions are assessed only after a defendant is convicted or enters a plea of guilty or nolo contendere. N.C.G.S. § 7A-304(a). "[N]o costs may be assessed when a case is dismissed." *Id.* The pretrial release services fee and the State Bureau of Investigation laboratory fee, both pertaining to services rendered before a defendant is convicted, are assessed only after conviction. N.C.G.S. § 7A-304(a)(5), (7). Neither of these pre-trial costs must be paid prior to the final determination of the action.

Moreover, the General Assembly effectively acknowledged that the appointment fee would be prepaid infrequently when it provided that counsel could not be denied for failure to pay the appointment fee in advance. N.C.G.S. § 7A-455.1(d). Requiring the State to collect the appointment fee only after a final determination of guilt does not obstruct the objective of N.C.G.S. § 7A-455.1. Therefore, the portion of N.C.G.S. § 7A-455.1(a) requiring payment "at the time of appointment" shall also be severed.

Our holding today also mandates the severance of the provisions in N.C.G.S. § 7A-455.1(b) that grant a credit against any attorney's fees owed for any defendant who pays the appointment fee in advance. Because the provision requiring payment at the time of appointment has been severed, no costs are imposed, or can be imposed, until after there is a conviction. Accordingly, the provisions entitling a defendant to a pre-payment credit shall also be severed.

The purposes of N.C.G.S. § 7A-455.1 do not depend on requiring payment at the time of appointment and providing a pre-payment credit to those defendants who pay in advance. Allowing the State to collect the appointment fee from convicted indigent defendants upon final disposition permits the State to recoup a portion of its expenses associated with providing a system that enables indigent defendants to be prosecuted. Therefore, we hold that because the remaining provisions of N.C.G.S. § 7A-455.1 can be enforced independently of the unconstitutional portions of the section, the unconstitutional provisions of N.C.G.S. § 7A-455.1 shall be severed and the balance of the section enforced. In accordance with our holding, the State is still permitted to collect the appointment fee from convicted defendants.

Finally, we address the constitutionality of N.C.G.S. § 7A-455.1, as modified by the severance, under the Constitution of the United States. The State contends the appointment fee does not have an unconstitutional chilling effect on an indigent defendant's exercise of the Sixth Amendment right to counsel. Defendant responds that the appointment fee constitutes a cumbersome procedural obstacle that effectively chills the right to counsel. He also contends that the statute fails to provide adequate notice and an opportunity to be heard. We find defendant's arguments unpersuasive.

Because we held above that the appointment fee is a cost of prosecution that can be assessed only against convicted defendants, the federal constitutional issues raised with regard to acquitted indigent

defendants are now moot. Further, any federal constitutional issues raised with regard to payment of the appointment fee by convicted indigent defendants are readily resolved.

The United States Supreme Court has rejected the notion that an indigent defendant's right to counsel is unconstitutionally chilled by the imposition of the costs of attorney's fees. *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642 (1974). This Court has also rejected the same argument. *See State v. Cummings*, 346 N.C. 291, 318, 488 S.E.2d 550, 566 (1997) ("Informing defendant that he may be required to reimburse the State for the costs of his attorney . . . does not 'chill' his right to have counsel provided."), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Where a valid purpose exists for the imposition of attorney's fees, other than merely penalizing indigent defendants who choose to exercise their fundamental right to counsel, no chilling effect arises. *Fuller v. Oregon*, 417 U.S. at 54, 40 L. Ed. 2d at 655. In addition, conditionally requiring indigent defendants who received the benefit of court-appointed counsel to repay attorney's fees, as opposed to non-indigent defendants, is not invidious discrimination based on wealth because the debt arose only because counsel was provided by the State in the first place. *Id.*

While *Fuller* was concerned with the recoupment of attorney's fees from convicted defendants, we believe the reasoning in that case applies to the appointment fee at issue here. Use of a portion of the costs paid by a convicted defendant to help the State defray some of the expenses associated with providing counsel to indigent defendants is a valid purpose that does not penalize those who seek court-appointed counsel. In *Fuller*, recoupment occurred only when the defendant could pay. Somewhat similarly, under N.C.G.S. § 7A-455.1, the appointment fee is either reduced to a lien or added to other costs when the defendant cannot pay, so payment of the fee occurs only when the defendant has the means. "The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Fuller v. Oregon*, 417 U.S. at 53, 40 L. Ed. 2d at 654. Thus, requiring convicted indigent defendants to pay costs, including the appointment fee at bar, does not unconstitutionally chill the exercise of the right to counsel.

A convicted defendant is entitled to notice and an opportunity to be heard before a valid judgment for costs can be entered. *State v. Crews*, 284 N.C. 427, 201 S.E.2d 840 (1974). Costs are imposed only at sentencing, so any convicted indigent defendant is given notice of the

appointment fee at the sentencing hearing and is also given an opportunity to be heard and object to the imposition of this cost. Therefore, the constitutional requirement of notice and an opportunity to be heard are satisfied. Accordingly, the imposition of the appointment fee on convicted indigent defendants passes federal constitutional muster.

On 2 April 2003, we ordered that all superior and district court judges refrain from entering orders prohibiting the collection of the appointment fee or the entry of a judgment for the appointment fee until this Court determined the constitutionality of N.C.G.S. § 7A-455.1. *State v. Webb*, 357 N.C. 55, 579 S.E.2d 583 (2003). Therefore, the State had notice of the possibility that the appointment fee "would be declared unconstitutional and had the opportunity to plan and budget for potential refunds." *Smith v. State*, 349 N.C. 332, 342, 507 S.E.2d 28, 34 (1998) (Frye, J., concurring). In light of our holding today, any indigent defendant who paid the appointment fee between 2 April 2003 and the date of this opinion, who was acquitted or whose case was dismissed, is entitled to a refund by the State. In addition, any defendant who received the pre-payment credit by paying the appointment fee prior to the final determination and made such payment between 2 April 2003 and this opinion is entitled to retain the benefit of the credit.

The decision of the trial court is affirmed as modified.

AFFIRMED AS MODIFIED.