688 S.E.2d 752 (2010)
BROWN BROTHERS HARRIMAN TRUST CO., N.A., as Trustee of the Benson Trust, Plaintiff,
v.
Anne P. BENSON, as Grantor of the Benson Trust; John H. Benson, as Beneficiary under the Benson Trust; Anne H. Benson, as Beneficiary under the Benson Trust; Linley C. Benson, as Beneficiary under the Benson Trust; Ruth Pringle Pipkin Franklin, as Contingent Beneficiary under the Benson Trust; and the Unborn and Unascertained Issue and Heirs of Anne P. Benson, as Contingent Beneficiaries under the Benson Trust, Defendants.
No. COA09-474.
Court of Appeals of North Carolina.
February 2, 2010.
*753 Culp Elliott & Carpenter, P.L.L.C., by William R. Culp, Jr., Charlotte, for Defendant-Appellant John H. Benson.
Smith Moore Leatherwood LLP, by Lynn F. Chandler, Charlotte, and Tanya N. Oesterreich, Greensboro, for Defendant-Appellee Anne P. Benson.
Essex Richards P.A., by Edward G. Connette, Charlotte, for Defendant-Appellee Ruth Pringle Pipkin Franklin.
Blanco Tackabery & Matamoros, P.A., by James E. Creamer, Jr., Winston-Salem, for Defendants-Appellees the Unborn and Unascertained Issue and Heirs of Anne P. Benson.
Johnston, Allison & Hord, P.A., by Paul A. Kohut, Martin L. White, and Carrington M. Angel, Charlotte, for Plaintiff-Appellee Brown Brothers Harriman Trust Co., N.A.
Ward and Smith, P.A., by E. Knox Proctor V and Cheryl A. Marteney, New Bern, for North Carolina Bankers Association, amicus curiae.
STEPHENS, Judge.
The sole issue before the Court in this case is whether the North Carolina Constitution requires application of the common law rule against perpetuities' restriction of the remote vesting of future interests in property. We conclude that it does not.

I. Factual Background and Procedural History
On 27 November 2007, Defendant Anne P. Benson executed a trust ("Benson Trust") naming Brown Brothers Harriman Trust Company, N.A. ("Brown Brothers") as Trustee, naming her children, John H. Benson, Anne H. Benson, and Linley C. Benson, as primary beneficiaries, and naming her unborn and unascertained heirs and her sister, Ruth Pringle Pipkin Franklin, as contingent beneficiaries. Defendant Anne P. Benson instructed Brown Brothers to administer the Benson Trust as a valid trust under N.C. Gen.Stat. § 41-23.[1] In accordance with the provisions of N.C. Gen.Stat. § 41-23, the Benson Trust is intended to be perpetual, that is, not subject to the rule against perpetuities,[2] but grants Brown Brothers, as Trustee, *754 the power to dispose of any trust property.
Alleging that the Benson Trust violates the common law rule against perpetuities, the primary beneficiaries instructed Brown Brothers to terminate the Benson Trust and distribute its assets. To resolve the conflicting demands of Defendant Anne P. Benson and the primary beneficiaries, Brown Brothers filed an action for declaratory relief seeking to determine its ability to administer the Benson Trust as valid under N.C. Gen.Stat. § 41-23.
On 27 October 2008, Brown Brothers filed a motion for summary judgment seeking a declaration of the constitutionality of N.C. Gen.Stat. § 41-23. Defendant Anne P. Benson, Defendant Franklin, and Defendants Unborn Issue and Heirs joined in the relief sought by Brown Brothers. On 1 December 2008, Defendant John H. Benson, individually and as legal representative of Anne H. Benson and Linley C. Benson,[3] filed a cross-motion for summary judgment, arguing that N.C. Gen.Stat. § 41-23 violates the North Carolina Constitution.
On 26 February 2009, the Honorable Albert Diaz, Special Superior Court Judge for Complex Business Cases, entered an order upholding N.C. Gen.Stat. § 41-23 as constitutional, finding that the prohibition of "perpetuities" contained in the North Carolina Constitution applies only to unreasonable restraints on alienation and not to the vesting of remote interests. The trial court thus granted Brown Brothers' motion for summary judgment and denied Defendants' cross-motion for summary judgment. Defendant John H. Benson, individually and in his representative capacity, filed notice of appeal from the trial court's order on 5 March 2009.

II. Discussion
Summary judgment is proper when a party is entitled to judgment as a matter of law. Integon Indem. Corp. v. Universal Underwriters Ins. Co., 131 N.C.App. 267, 270, 507 S.E.2d 66, 68 (1998). Defendant John H. Benson concedes that the facts of the present case are undisputed and that the case presents only questions of law, rendering summary judgment an appropriate remedy. On appeal, this Court reviews a trial court's order granting summary judgment in a declaratory judgment action under the same standard as for other actions, id., which is de novo. Robins v. Town of Hillsborough, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007).
Defendant John H. Benson argues that the trial court erred in upholding the constitutionality of N.C. Gen.Stat. § 41-23 because section 41-23 supersedes the common law rule against perpetuities, which Defendant John H. Benson contends is a rule mandated by the North Carolina Constitution. Specifically, Defendant John H. Benson contends that section 41-23 violates section 34 of the Declaration of Rights, which provides, "[p]erpetuities and monopolies are contrary to the genius of a free state and shall not be allowed." N.C. Const. art. I, § 34. We disagree.
A reviewing court "gives acts of the General Assembly great deference, and a statute will not be declared unconstitutional under our Constitution unless the Constitution clearly prohibits that statute." In re Spivey, 345 N.C. 404, 413, 480 S.E.2d 693, 698 (1997). The basic principle of constitutional construction is to give effect to the intent of the framers. State v. Webb, 358 N.C. 92, 94, 591 S.E.2d 505, 509 (2004). Thus,
"[c]onstitutional provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption. To ascertain the intent of those by whom the language was used, we must consider the conditions as they then existed and the purpose sought to be accomplished."
Id. (quoting Perry v. Stancil, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953)).

*755 A. Intent of the Framers

In 1820, the North Carolina Supreme Court described the meaning of the word "perpetuity" as follows:
The meaning which the law annexes to this term is that of an estate tail so settled that it cannot be undone or made void. As when if all the parties who have interest join they cannot bar or pass the estate, but if, by the concurrence of all having the estate tail, it may be barred, it is not a perpetuity. It is in reference to estates tail that the word is used in the bill of rights[.] . . . [A] perpetuity which the law would deem void must be an estate so settled for private uses that by the very terms of its creations there is no potestas alienandi in the owner.
Griffin v. Graham, 8 N.C. (1 Hawks) 96, 130-32 (1820). Two years later, our Supreme Court held that the term "perpetuity" as used in the "clause of the Declaration of Rights which condemns monopolies and perpetuities. . . imports property locked up from the uses of the public, and which no person has power to alienate." Yadkin Navigation Co. v. Benton, 9 N.C. (2 Hawks) 10, 13 (1822). Thus, in the historical context of the passage of the North Carolina Constitution, "[a] perpetuity is the attempt to forbid the alienation of lands under any circumstances, and to provide for their descent or disposition in a fixed, unchangeable way." United States v. Boyd, 68 F. 577, 580 (C.C.W.D.N.C.1895).
Defendant John H. Benson acknowledges that section 34 of the Declaration of Rights was adopted to prohibit unreasonable restraints on alienation of property, specifically in the context of estate entails[4] that kept property within one family for generations. Indeed, the 1776 North Carolina Constitution also required "[t]hat the future Legislature of this State shall regulate Entails, in such a Manner as to prevent Perpetuities." N.C. Const. of 1776 § 43 (as reprinted in Iredell's revisal 1791). The Legislature abolished estates in tail in 1784 through passage of N.C. Gen.Stat. § 41-1, which converted fee tail estates into fee simple estates.[5] N.C. Gen.Stat. § 41-1 (2007).

B. Incorporation of the Common Law Rule Against Perpetuities
Despite abolition of the estate tail, the ability to keep property continually out of the marketplace remained through creation of future interests that perpetually shift among devisees. See McQueen, 234 N.C. at 741, 68 S.E.2d at 834. The common law rule against perpetuities developed to prevent shifting future interests from effecting an unreasonable restraint on alienation. Id. The rule attempts to prevent the creation of a fixed succession of future interests that will cause ownership of property to shift perpetually among devisees who have no power to alienate the property. To achieve this purpose, the common law rule invalidates any future interests that are not certain to vest or terminate within 21 years and a gestational period after a life or lives in being at the time of the devise.[6]Id. at 741, 68 S.E.2d at *756 835. The common law rule thus determines when a restraint on alienation becomes unreasonable by providing an arbitrary stopping point for the creation of restrictive future interests. Id.
Defendant John H. Benson argues that North Carolina courts have recognized the common law rule against perpetuities, and specifically, its restriction of the remote vesting of future interests, as constitutionally required to preserve the alienability of property. In Mercer v. Mercer, 230 N.C. 101, 52 S.E.2d 229 (1949), our Supreme Court stated that the rule against perpetuities "is not one of construction but a positive mandate of law to be obeyed irrespective of the question of intention." Id. at 103, 52 S.E.2d at 230 (citing N.C. Const. art. I, § 3[4]).[7] This Court has also noted that "[t]he common-law rule against perpetuities has been long recognized and enforced in this jurisdiction, and its application has the continuing sanction of Article I, Section 34 of our State Constitution." N.C. Nat'l Bank v. Norris, 21 N.C.App. 178, 180, 203 S.E.2d 657, 658 (1974).
We interpret the foregoing cases not as recognizing a constitutional mandate for the application of the rule against perpetuities, but rather as recognizing the common law rule as a tool utilized to implement the constitutional prohibition of perpetuities by preventing restrictions on alienation from lasting for an unreasonably long period. Citation of the North Carolina Constitution in Mercer is consistent with this interpretation; indeed, the Court went on to state that the rule's "primary purpose is to restrict the permissible creation of future interests and prevent undue restraint upon or suspension of the right of alienation." Mercer, 230 N.C. at 103, 52 S.E.2d at 230. The Mercer Court's characterization of the rule as "not one of construction but a positive mandate of law to be obeyed irrespective of the question of intention," id., merely recognizes its bright-line application. Further, this Court's recognition in Norris of the constitutional sanction of the rule against perpetuities is consistent with an interpretation of the rule as one acceptable method for implementing the constitutional prohibition of perpetuities, without suggesting that the rule itself is mandated by the State Constitution.
The General Assembly's modification of the common law rule against perpetuities through passage of the Uniform Statutory Rule Against Perpetuities ("USRAP") in 1995 supports our interpretation of the rule as one acceptable method for regulating unreasonable restraints on alienability rather than as a constitutionally required rule. The USRAP established a "wait-and-see" approach to future interests under which an interest is valid if it "either vests or terminates within 90 years after its creation." N.C. Gen.Stat. § 41-15 (2007). Thus, instead of finding a future interest invalid at the time of its creation if it is not certain to vest or terminate within the prescribed period, as was required under the common law rule, a future interest is invalid under the USRAP only if it has not vested or terminated within 90 years of its creation.
As recently as 2002, our Supreme Court has recognized the authority of the General Assembly to modify the common law rule, noting that "the General Assembly has seen fit to exclude certain kinds of transactions from the statutory rule's application," which "is contrary to the common law, but reflects a decision by the General Assembly that the rule `is a wholly inappropriate instrument of social policy to use as a control over such arrangements.'" Rich, Rich & Nance v. Carolina Constr. Corp., 355 N.C. 190, 194, 558 S.E.2d 77, 79-80 (2002) (quoting N.C. Gen. Stat. § 41-18 cmt. A (2007)). We agree with the General Assembly that the common law rule against perpetuities is more appropriately characterized as an "instrument of social policy," N.C. Gen.Stat. § 41-18 cmt. A (2007), rather than as a rule whose application is required by the North Carolina Constitution.

*757 C. Plain Meaning

Defendant John H. Benson also contends that incorporation of the common law rule's restriction of the vesting of remote future interests into the constitutional meaning of "perpetuity" is supported by the plain meaning of "perpetuity," which now refers to the vesting of remote interests rather than the inalienability of property. Black's Law Dictionary provides an historical definition of "perpetuity" as "[a]n inalienable interest" and a current definition as "[a]n interest that does not take effect or vest within the period prescribed by law." Black's Law Dictionary 1256 (9th ed. 2009).
While a reviewing court may consider the plain meaning of language in interpreting the State Constitution, Webb, 358 N.C. at 97, 591 S.E.2d at 511, a plain meaning analysis is not controlling in the present case. First, the presence of multiple definitions for the word "perpetuity" suggests that the word's meaning is not plain. Second, because the controlling standard for constitutional interpretation is intent of the framers, id. at 94, 591 S.E.2d at 509, the historical definition of the term is the most relevant. In this case, the historical definition of "perpetuity" is consistent with our historical analysis of the meaning of the term as it is used in the State Constitution. See id. at 97, 591 S.E.2d at 510 ("The results yielded by our historical review is [sic] consistent with a plain meaning analysis."). Thus, we hold that the North Carolina Constitution's prohibition of perpetuities prohibits unreasonable restraints on alienation without requiring a rule specifying a time period within which a future interest must vest.

D. Constitutionality of N.C. Gen.Stat. § 41-23
The General Assembly again modified both the common law rule and the USRAP as each applies to trusts by adopting N.C. Gen.Stat. § 41-23, which expressly supersedes both the common law rule against perpetuities and the USRAP. N.C. Gen. Stat. § 41-23(h) (2007). N.C. Gen.Stat. § 41-23 contains no requirement regarding the time period in which a remote future interest must vest, but maintains the marketability of property by providing:
(a) A trust is void if it suspends the power of alienation of trust property, as that term is defined in G.S. 36C-1-103, for longer than the permissible period. The permissible period is no later than 21 years after the death of an individual then alive or lives then in being plus a period of 21 years.
. . . .
(d) The power of alienation is suspended only when there are no persons in being who, alone or in combination with others, can convey an absolute fee in possession of land, or full ownership of personal property.
(e) Notwithstanding subsection (a) of this section, there is no suspension of the power of alienability by a trust or by equitable interests under a trust if the trustee has the power to sell, either expressed or implied, or if there exists an unlimited power to terminate the trust in one or more persons in being.
N.C. Gen.Stat. § 41-23 (2007). N.C. Gen. Stat. § 41-23 adopts the distinct approach of requiring existence of the power of alienation rather than requiring that remote future interests vest or terminate within a certain time period. Thus, under section 41-23, a trust may remain valid in perpetuity as long as the appropriate rights of sale or termination are held.
Because we hold that section 34 of the Declaration of Rights does not require application of the common law rule against perpetuities, N.C. Gen.Stat. § 41-23 does not violate the North Carolina Constitution as a result of its repeal of the common law rule. Section 41-23 is also consistent with the constitutional prohibition of perpetuities because it provides a mechanism for preventing unreasonable restraints on alienation. Rather than addressing alienability of property indirectly by regulating the vesting of remote interests, as does the common law rule, section 41-23 directly preserves alienability of property by prohibiting suspension of the power of alienation for longer than the period provided. N.C. Gen.Stat. § 41-23(a) (2007). Thus, we hold that N.C. Gen.Stat. § 41-23 is *758 a constitutional, valid exercise of the General Assembly's authority.

III. Conclusion
Because the Benson Trust complies with the statutory requirements of N.C. Gen.Stat. § 41-23 by granting Brown Brothers, as Trustee, the power to transfer title to trust property, the Benson Trust is valid and does not violate the North Carolina Constitution. The trial court's order is
AFFIRMED.
Judges STROUD and BEASLEY concur.
NOTES
[1] N.C. Gen.Stat. § 41-23 was enacted in 2007 to repeal the common law and statutory rules against perpetuities as applied to trusts and alternatively require preservation of the power of alienation. Act of Aug. 19, 2007, ch. 41, 2007-391 N.C. Sess. Laws 1148.
[2] "Under this rule [against perpetuities], no devise or grant of a future interest in property is valid unless title thereto must vest, if at all, not less than twenty-one years, plus the period of gestation, after some life or lives in being at the time of the creation of the interest." McQueen v. Branch Banking & Trust Co., 234 N.C. 737, 741, 68 S.E.2d 831, 835 (1952).
[3] John H. Benson serves as legal representative of his minor sisters, Anne H. Benson and Linley C. Benson. John H. Benson's legal representation of his sisters is uncontested.
[4] "Estate entails" refers to estates in property that operate to limit inheritance of the property to particular descendants of the owner, specifically by preventing alienation of the property so that it must descend according to the original devise. See Strickland v. Jackson, 259 N.C. 81, 85, 130 S.E.2d 22, 25 (1963) ("An estate tail is defined . . . as an estate of inheritance which is to pass by lineal descent.") (internal citation and quotation marks omitted).
[5] Unlike fee tail estates, which provide for inheritance of property in a fixed manner by preventing alienation, fee simple estates always belong to the current owner (and pass to the current owner's heirs) and are freely alienable absent specific restrictions. See Seawell v. Hall, 185 N.C. 80, 84, 116 S.E. 189, 191 (1923) ("An estate given to a man and the heirs of his body was called a fee simple on condition that the grantee had issue, and . . . a fee conditional limited to the heirs of one's body was denominated a fee tail.").
[6] A period for gestation is added to the time period in which a future interest must vest only if "gestation is in fact then taking place." Farnan v. First Union Nat'l Bank, 263 N.C. 106, 110, 139 S.E.2d 14, 17-18 (1964). This allows for the beginning of another life in being at the time of the devise within which the interest may vest even though birth occurs shortly after the devise. See Stellings v. Autry, 257 N.C. 303, 323, 126 S.E.2d 140, 156 (1962) (noting that the time period in which a future interest must vest includes "the period of gestation when the inclusion [thereof] is necessary to cover cases of posthumous birth," or, in the case of an executory devise, birth after "the effective date of the instrument creating the future interest") (internal citation and quotation marks omitted).
[7] The Supreme Court erroneously cited section 31 of the Declaration of Rights, which addresses the quartering of soldiers. The relevant constitutional provision addressing perpetuities is section 34.