IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-870

Filed: 21 January 2020

Wake County, No. 17 CVS 4642

COMMON CAUSE, DAWN BALDWIN GIBSON, ROBERT E. MORRISON, CLIFF MOONE, T. ANTHONY SPEARMAN, ALIDA WOODS, LAMAR GIBSON, MICHAEL SCHACHTER, STELLA ANDERSON, MARK EZZELL, and SABRA FAIRES, Plaintiffs,

v.

DANIEL J. FOREST, in his official capacity as President of the North Carolina Senate; TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives; and PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, Defendants.

Appeal by plaintiffs from order entered 29 May 2018 by Judges Wayland J. Sermons, Martin B. McGee, and Todd Pomeroy in Wake County Superior Court. Heard in the Court of Appeals 9 May 2019.

*Patterson Harkavy LLP, by Burton Craige, Narendra K. Ghosh, and Paul E. Smith, for plaintiffs-appellants.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Matthew Tulchin, for defendants-appellees.*

DIETZ, Judge.

In late 2016, Hurricane Matthew struck North Carolina and devastated many communities along our coast and our State's eastern interior. On 13 December 2016, following a proclamation from the governor calling a special session, our General Assembly gathered in Raleigh for a third extra session and, within twenty-four hours,

enacted the Disaster Recovery Act of 2016. Then, not long after that special session adjourned, the General Assembly convened a fourth extra session, this time taking on matters far more politically controversial than helping fellow citizens recover from natural disasters. Two days later, the legislature passed bills from that fourth extra session.

The plaintiffs in this case contend that, although the General Assembly had the authority to convene that fourth extra session, the speed with which the legislature enacted those controversial bills violates Article I, Section 12 of our State Constitution, which provides that "the people have a right . . . to instruct their representatives."

As explained below, the unanimous three-judge panel properly rejected this argument and granted summary judgment in favor of the State. The right to instruct is part of a provision in the Declaration of Rights that guarantees the people the right to assemble, to instruct their representatives, and to petition the government for redress of grievances. The right protected is one of open access to the law-making process and of open communication with one's representatives in that process. The courts have the power to defend that right.

But the decision of how quickly particular laws, on particular subjects, must be enacted is a political question reserved for another branch of government. The plaintiffs in this case believe the two-day deliberations during the fourth extra

session, without any advance notice of the topics to be addressed, were insufficient for them to fully convey their views to their legislators. But citizens who received insufficient funding, or were left out entirely, from the disaster relief act might feel the same of the one-day deliberation over that bill. And there are countless examples of legislative proposals, important to some constituency, that are added to, or cut from, a final bill with even less notice than that.

We reject the plaintiffs' claim that our State Constitution permits the courts to wade into this legislative process and dictate how much time our General Assembly must spend contemplating legislative action. The record in this case demonstrates that the General Assembly provided public notice and access to the fourth extra session and that no portion of the official deliberations occurred in secret. Indeed, this fourth extra session generated *far more* public and media attention than many other last-minute legislative acts of our General Assembly throughout its history.

To be sure, there will be times when citizens believe that the legislature's decision to move quickly on a particular bill, even though lawful public notice and access is provided, is nevertheless imprudent and that the opportunity to publicly oppose that bill, or rally opposition to it, has been frustrated. The remedy for these concerns is not with the courts; it is at the ballot box.

Accordingly, the three-judge panel properly rejected the plaintiffs' Right to Instruct Clause challenge and accompanying Law of the Land Clause challenge. We

affirm the trial court's judgment.

## Facts and Procedural History

On 14 December 2016, shortly after our General Assembly concluded a third extra session to enact hurricane relief, the legislature announced that it was convening a fourth extra session based on the request of three-fifths of the members of the two houses "to consider bills concerning any matters the General Assembly elects to consider." It is undisputed that the General Assembly had the constitutional authority to convene this fourth extra session and to do so without announcing the subject matter of the bills that legislators planned to consider.

Defendants scheduled the fourth extra session to be held at 2:00 p.m. that day and members introduced twenty-one bills in the House and seven in the Senate, including the two bills ultimately enacted and challenged in this lawsuit, House Bill 17 and Senate Bill 4. As is customary for abbreviated extra sessions, the General Assembly immediately passed several procedural changes to their chamber rules to permit bills to move more quickly than in a regular session.

Within forty-eight hours after convening the fourth extra session, the General Assembly passed House Bill 17 and Senate Bill 4, and the Governor signed both bills into law. It is undisputed that, despite the speed of passage, all bills introduced during this special session, including those enacted into law, were publicly available and posted on the General Assembly's website along with up-to-date information

about the progress on those bills as they made their way through the approval process described in our Constitution.

Since 1940, this is the first extra session in which the General Assembly chose not to announce in advance the subject matter of the laws they would consider during the session. Although unusual, that choice was not unlawful—as noted above, the State Constitution does not require the legislature to explain the purpose of a special session before convening it.

According to documents included in the record on appeal, the suddenness of the fourth extra session received widespread state and national news coverage, generated an "email blitz" by thousands of frustrated citizens, and prompted hundreds of protestors to come to the General Assembly and loudly object to the process and the proposed bills while the legislature convened.

On 19 April 2017, Plaintiffs sued the leaders of the General Assembly in their official capacities,[1] alleging that the passage of the challenged laws during the fourth extra session violated the Right to Instruct Clause of Article I, Section 12 of the North Carolina Constitution, which provides that "the people have a right . . . to instruct their representatives," as well as corresponding rights in the Law of the Land Clause of Article I, Section 19 of the Constitution.

---

[1] "A suit against defendants in their official capacities, as public officials . . . is a suit against the State." *Harwood v. Johnson*, 326 N.C. 231, 238, 388 S.E.2d 439, 443 (1990). We therefore refer to the Defendants collectively as the State in this opinion for ease of reference.

After some early procedural motions, the case was transferred to a three-judge panel pursuant to N.C. Gen. Stat. § 1-267.1. On 21 February 2018, the three-judge panel heard arguments on Plaintiffs' motion for summary judgment and the State's motion to dismiss and for judgment on the pleadings, which the trial court converted into a cross-motion for summary judgment. On 29 May 2018, the unanimous three-judge panel granted summary judgment in favor of the State with an accompanying memorandum opinion explaining the panel's reasoning. Plaintiffs timely appealed.

**Analysis**

We review a trial court's ruling on state constitutional questions *de novo*. *Cooper v. Berger*, 370 N.C. 392, 413, 809 S.E.2d 98, 110–11 (2018). "When assessing a challenge to the constitutionality of legislation, this Court's duty is to determine whether the General Assembly has complied with the constitution. If constitutional requirements are met, the wisdom of the legislation is a question for the General Assembly." *Hart v. State*, 368 N.C. 122, 126, 774 S.E.2d 281, 284 (2015).

"In performing our task, we begin with a presumption that the laws duly enacted by the General Assembly are valid." *Id.* Thus, "a law will be declared invalid only if its unconstitutionality is demonstrated beyond reasonable doubt." *Id.*

When interpreting our State Constitution, "provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption." *State v. Webb*, 358 N.C. 92, 94, 591 S.E.2d 505, 509 (2004). "To ascertain

the intent of those by whom the language was used, we must consider the conditions as they then existed and the purpose sought to be accomplished." *Id.*

## I.    Right to Instruct Clause

We begin with Plaintiffs' challenge under the Right to Instruct Clause. Article I, Section 12 of the North Carolina Constitution provides that "the people have a right . . . to instruct their representatives":

> **Sec. 12.    Right of assembly and petition**. The people have a right to assemble together to consult for their common good, to instruct their representatives, and to apply to the General Assembly for redress of grievances; but secret political societies are dangerous to the liberties of a free people and shall not be tolerated.

This "right to instruct" language has existed since our State Constitution was first framed in 1776. Although nearly two-and-a-half centuries have passed, no appellate court has ever interpreted what this right means.

We begin by examining what the words of this provision meant in 1776. We are, of course, no longer governed by our State's 1776 Constitution. North Carolina has had several constitutions through its history. We are now on our third. It took effect in 1971 after being ratified by the people of this State. *See* 1969 N.C. Sess. Laws 1461, ch. 1258, *ratified* Nov. 3, 1970. But the language of the Right to Instruct Clause has never changed, and the framers of the 1971 Constitution gave no indication that the meaning of those words had changed when they chose to re-adopt them.

Thus, we examine what the words of the Right to Instruct Clause meant in 1776, at the time of their adoption. Dictionaries from this time period define the word "instruct" as "to teach; to form by precept; to inform authoritatively" and "to teach, train, or bring up." Samuel Johnson, *A Dictionary of the English Language* (3d ed. 1768); Nathan Bailey, *An Universal Etymological English Dictionary* (1775). Thus, the word "instruct" appears to have had generally the same meaning then that it does today. To instruct one on some issue, in ordinary usage, generally means to teach them what you think about it.

It is not quite so easy, though, because the word "instruct" also can mean to tell someone they *must* do something. And although dictionaries at the time did not include this meaning, the concept of "instructing" one's representatives in Eighteenth Century usage sometimes conveyed that meaning: it meant a binding order telling a representative *how* to vote. For example, the three-judge panel's memorandum opinion references debates about including a "right to instruct" in the Bill of Rights in the United States Constitution, and concerns from framers at the time that this would produce an unwieldly "direct democracy." *Common Cause v. Forest*, No. 17 CVS 4642, Mem. Op. at 11 (N.C. Super. Ct. 2018).

As one scholar explained, examining the wording of a "right to instruct" provision in the Massachusetts Constitution, adopted around the same time as North Carolina's original constitution, "[t]he right to instruct legislators is distinct from the

right to present petitions and otherwise express opinions. Petitions and opinions are advisory; instructions are binding." *Rediscovering the Right to Instruct Legislators*, 26 New Eng. L. Rev. 355, 355 (1991).

The Right to Instruct Clause in our Constitution does not convey this alternative meaning. In this Court's research of legislative practice in our State, we could find no example *ever* of legislators being compelled to vote in the manner that the people they represent commanded them to. Moreover, each time our State enacted a new Constitution—first in 1868 and again in 1971—they included the same right to instruct clause although, at the time, it was universally understood that legislators were elected to act as representatives and to use their judgment to vote in ways that best reflected the will of their constituents. *See generally* John V. Orth & Paul Martin Newby, The North Carolina State Constitution 58 (2d ed. 2013). We therefore interpret the "right to instruct" using the ordinary meaning of these words at the time of adoption.

Having concluded that the words in the Right to Instruct Clause reflect a right of the people to "teach" or "advise" their representatives, not to bind them, we must determine the scope of that right. One common tool for illuminating the meaning of a phrase in a constitution is to examine it "contextually and to compare it with other words and sentences with which it stands connected." *State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 478 (1989).

Here, the people's right "to instruct their representatives" is nestled between two other clauses expressly guaranteeing the people's rights to "assemble together to consult for their common good" and "to apply to the General Assembly for redress of grievances." N.C Const. art. 1, § 12. This structure confirms that the right involves the ability of our citizenry to be informed about government action and to express their views about that action. We thus agree with the trial court that the Right to Instruct protects the ability of the people to contact their elected representatives and convey their views about the decisions those representatives are tasked with making on their behalf.

Having interpreted the meaning of the Right to Instruct, we now turn to the heart of this case: whether the State violated that right. The plaintiffs argue that, because they received no advance notice of the legislative topics to be introduced in the fourth extra session, and because the bills introduced in that session were debated and enacted in less than forty-eight hours, the plaintiffs were denied "the meaningful opportunity to inform their representatives about legislation during the legislative process." We reject this argument.

At the outset, it is important to note that "the people" in a general sense—that is, the public overall—unquestionably had notice of the session and the opportunity to instruct their legislators both that they opposed *any* action in the special session and that they opposed particular bills introduced during that session. The record on

appeal shows (and plaintiffs do not dispute) that the fourth extra session was convened through a joint proclamation in accordance with constitutional requirements and that the session was publicly announced. Likewise, the record shows (and plaintiffs do not dispute) that the bills introduced during this special session were publicly available in the same manner as other bills introduced during legislative sessions. There were audio broadcasts of the House and Senate sessions and other official meetings and proceedings of legislative deliberations.

Moreover, the record indicates that this special session, and the bills introduced during it, received widespread public attention while the legislature convened to debate, including extensive state and national news coverage. Many of those news reports discussed the subject matter of the proposed laws. In addition, the State's legislative services officer testified in an affidavit that "hundreds of people" were present in the chambers as the General Assembly debated the bills, far more than are typically present during a legislative session. News reports released while the session was in progress, and submitted as part of the record on appeal, describe "widespread protest" organized by the opponents of the bills during the session and even an "email blitz from thousands asking legislators not to enact the moves."

Simply put, the plaintiffs' argument is not that *the people*, or even these plaintiffs individually, were not given notice of the special session or notice of the bills under consideration, or an opportunity to contact their legislators to convey their

views. Their argument, as they explain in their briefing, is that they needed more time to "mobilize" opposition to the bills and to attempt to "persuade their representatives."

To be sure, as plaintiffs establish in a series of affidavits, the law-making process ordinarily moves far more slowly, giving observers plenty of time to rally support for or opposition to proposed legislation. But not always. Take, for example, the third extra session that convened the day before. During that session, which lasted less than twenty-four hours, the General Assembly enacted the Disaster Recovery Act of 2016. *See* N.C. Session Law 2016-124. That Act contains many pages of complicated appropriations for relief from Hurricane Matthew and other natural disasters. It allocated hundreds of millions of dollars to various agencies and organizations ranging from the State Fire Marshal to the nonprofit corporation Golden L.E.A.F. *Id.*

If forty-eight hours was a constitutionally insufficient time to enact the laws from the fourth extra session, twenty-four hours could not be sufficient for a two hundred million dollar appropriations bill. This disaster relief act, and countless other acts of our General Assembly, would be rendered unconstitutional were we to accept the plaintiffs' argument that all legislative action must be done slowly enough to accommodate those who seek to oppose it politically.

Nor is there anything constitutionally significant about the challenged bills' passage during the fourth extra session, as opposed to a regular session. The plaintiffs repeatedly point out that there was no "advance notice" of the topics to be addressed in the special session. But our Constitution does not require that notice, just as it does not require the General Assembly to provide advance notice of the matters it will take up when it begins a regular session. *See* N.C. Const. art. II, § 11(1), (2). Indeed, the public record of our General Assembly's deliberations discloses countless examples of bills that were introduced without any "advance notice" to the public that a bill on that subject matter would be introduced. And, likewise, there are countless examples of bills that substantially changed in one form or another—often as the result of a sudden amendment—and were enacted just days later, again with no "advance notice" that this might occur.

The framers could have included time restrictions in Article II, for example by requiring that when bills are "read three times in each house" that it must happen on different days, or consecutive weeks. *See* N.C. Const. art. II, § 22. Instead, the framers left to the judgment of the legislative branch how quickly to move a bill through the law-making process. The Right to Instruct Clause does not change that. It simply requires that the process, however quickly it moves, must be open to the public, and that the people must have ways to contact their representatives to convey their views during that process.

In sum, the plaintiffs have not shown that they were denied the right to instruct their representatives. They have shown, at most, that their representatives chose not to listen to them. That may be a reason not to vote for those representatives in the future; it is not a constitutional violation.

The plaintiffs also argue, apparently in the alternative, that the General Assembly has the authority to act quickly to debate and pass certain laws consistent with the Right to Instruct Clause, but that when the legislature engages in this "abridged" law-making, it must "provide a valid justification for that departure from historical precedent." This argument goes far beyond the conceivable requirements of the right to instruct.

The judicial branch has no constitutional authority to demand from the legislative branch an explanation of why a particular bill must move quickly to enactment, much less the authority to review whether that explanation is "valid." *See Cooper*, 370 N.C. at 407, 809 S.E.2d at 107. The political question doctrine, which stems from our State's express guarantee of the separation of powers, "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the legislative or executive branches of government." *Id.* at 408, 809 S.E.2d at 107. In other words, the courts cannot inquire about why the legislature moves quickly on some bills but not others. That political decision is solely for the legislative branch.

Having found that the State did not violate the Right to Instruct Clause, we hold that the trial court properly entered summary judgment in favor of the State on this constitutional claim.

## II.    Law of the Land Clause

Plaintiffs next contend that the State violated the Law of the Land Clause—our State's equivalent of the Due Process Clause in the U.S. Constitution. *In re Moore's Sterilization*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976). They assert both a "substantive" and a "procedural" due process argument.

Plaintiffs' substantive due process argument turns entirely on the alleged violation of their right to instruct their representatives—they contend that the State "deprived plaintiffs of their liberty interest under Article I, Section 12 of the North Carolina Constitution 'to instruct their representatives.'" As discussed above, the State did not violate the Right to Instruct Clause and thus we reject the plaintiffs' substantive due process argument as well.

Plaintiffs also argue that the State violated their procedural due process rights by "convening the Fourth Extra Session with no notice and providing citizens no meaningful opportunity to be heard." But again, this argument collapses into their claim under the Right to Instruct Clause, which provides the contours of the procedural right to notice and opportunity to be heard. And, for the same reasons we rejected that argument, we reject this one. The State provided public notice of both

the fourth extra session and the bills introduced during that session. The General Assembly's actions during that special session complied with the Constitution, state law, and that body's own rules. The plaintiffs had notice of the special session; access to the bills proposed in this special session; the ability to contact their representatives through various means; and, as a result, the opportunity to convey their views about the proposed legislation. That is all the procedural component of the Law of the Land Clause requires. *Johnston v. State*, 224 N.C. App. 282, 307–10, 735 S.E.2d 859, 877–78 (2012).

Accordingly, we hold that the trial court properly entered summary judgment in favor of the State on the plaintiffs' Law of the Land Clause claim.

## Conclusion

We affirm the trial court's judgment.

AFFIRMED.

Judges MURPHY and COLLINS concur.